**Ann McLAUGHLIN, Secretary of the United States Department of Labor, Plaintiff–Appellant,**

v.

**Charlotte JUNG, et al., Defendants–Appellees.**

No. 88–1085.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1988.

Decided Oct. 24, 1988.

---

Karen L. Handorf, Office of the Sol. U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

James G. McIntire, Krieg Devault Alexander & Capehart, Indianapolis, Ind., for defendants-appellees.

Before EASTERBROOK and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

The Secretary of the U.S. Department of Labor (the Secretary) appeals from the district court's denial of her Rule 60(b) motion to set aside a consent order. The Secretary, who prepared the order which was signed by all parties and approved by the court, claims that she erroneously calculated and thus substantially underestimated the potential loss figure which was set out in the order. We find that the district court did not abuse its discretion in denying the Secretary's motion.

## I.

The employees of the State Exchange Bank of Culver, Indiana and its affiliates were covered by a Profit Sharing Plan and Trust (the Plan) which was governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* As of January 1, 1982, the trustees of the Plan had invested all of the Plan's assets in unsecured loans to the State Exchange Finance Company (SEFCO). Despite indications that SEFCO was experiencing financial difficulties, the Plan trustees did not take steps to rescind the SEFCO notes and to secure the Plan's assets elsewhere.

SEFCO filed a bankruptcy petition on December 30, 1982. In the subsequent reorganization of SEFCO, a new corporation was formed, the NorCen Bank.[1] As part of the reorganization agreement, the Plan purchased about $837,000 worth of NorCen Bank stock. The Plan made this purchase with approximately $450,000 worth of its SEFCO notes, and about $387,000 in cash.

The Secretary investigated the Plan's investments in SEFCO. The Secretary determined that the trustees of the Plan had committed several violations of the provisions of ERISA by placing the assets with SEFCO, a party in interest to the Plan, § 1106(a)(1)(B); by placing all of the assets with SEFCO as unsecured loans, thereby failing to diversify the Plan's investments, § 1104(a)(1)(C); and by failing to rescind the Plan's SEFCO notes when SEFCO began to evidence financial problems, § 1104(a)(1)(A), (B).

In order to provide monetary relief to the Plan for its losses as well as to install a new trustee for the Plan, the Secretary entered into negotiations with the defendant trustees of the Plan. Extensive negotiations ensued between counsel for the Secretary and counsel for the defendants. The subjects of the negotiations included the resignation of the defendant trustees, injunctive relief against these trustees, the appointment of a new trustee, reimbursement by the bank of certain Plan losses, the application of various interest rates, the amount and operation of the security to be posted to ensure payment of the Plan's losses, and the Plan's potential loss figure. It is this final element, the potential loss figure, which is central to this appeal.

At the outset of the negotiations, the Secretary computed that the Plan held $2,428,432 in SEFCO notes on January 1, 1982. After the bankruptcy reorganization, the Plan received cash credits from various sources in the amount of $1,665,887. The Secretary proposed, essentially, that the potential loss figure be set at the difference between these two amounts plus interest. Defendants noted that not only had they received cash credits, they also held $837,000 worth of NorCen Bank stock —of which $450,000 worth had been purchased with the SEFCO notes. According to the defendants, they should receive cred-

---

1. At about the same time, the NorCen Bank Profit Sharing Plan succeeded the Profit Sharing Plan and Trust for Employees of the State Exchange Bank and Affiliated Organizations.

it, in computing the potential loss figure, for the $450,000 worth of SEFCO notes they had cashed in for NorCen Bank stock. This proposal was rejected by the Secretary.

About four months later, at the conclusion of the negotiations, counsel for the Secretary drafted the consent order. The Secretary's accountant, by supposedly applying the parties' negotiated settlement formula, calculated the potential loss figure at $503,259 plus interest. In addition to these figures, the Secretary also determined the level of the required security as well as the amount of a separate payment to be made by the defendants. The consent order contained the several remaining elements negotiated between the parties. Significantly, the consent order did not contain the formula for determining the potential loss figure—only the resulting dollar amount calculated by the Secretary. The Secretary sent her draft of the consent order to the defendants. On December 18, 1986, the Secretary filed a complaint in the district court against the defendants and, contemporaneously therewith, a copy of the proposed consent order. On January 8, 1987, the parties signed and the district court approved the consent order as submitted.

Over five months later, on June 30, 1987, the Secretary moved to vacate the consent order pursuant to Fed.R.Civ.P. 60(b). The Secretary noted that, in calculating the potential loss figure of $503,259, the Secretary's accountant had given the defendants credit for the SEFCO notes converted into NorCen Bank stock. According to the Secretary, this credit was incorrect because the $450,000 worth of SEFCO notes converted into NorCen Bank stock should have been treated as part of the potential loss figure, not as credit against that figure. The Secretary claimed the potential loss figure should actually have been about $953,259. On November 20, 1987, the district court denied the Secretary's motion.

## II.

The sole issue on appeal is whether or not the district court abused its discretion by denying the Secretary Rule 60(b) relief. "Upon a proper showing, even a consent judgment may be set aside under Rule 60(b)." *Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 796 (7th Cir. 1980) (citations omitted). Under any circumstance, however, such relief is an extraordinary remedy available only in exceptional circumstances. *Id.* at 795. Moreover, the district court's decision not to reopen or set aside a judgment under Rule 60(b) may be reviewed only for abuse of discretion, and to find abuse of discretion this court must find that no reasonable person could agree with the district court. *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831 (7th Cir.1985).

The deference is never greater than when the underlying judgment is a settlement. The settlement *itself* is an exercise in compromise rather than resolution of legal issues. The parties compromise on legal and factual matters, and there could be a very substantial range within which the compromise would be reasonable. There is no "right" settlement. When the underlying judgment cannot be "wrong" in the strict sense—though an error could influence the range within which the settlement takes place—a judge's decision to leave well enough alone cannot readily be "wrong" either.

*Id.* at 831–32 (footnote omitted).

The district court focused upon the fact that the Secretary had the power to control the parties' negotiations, drafted the consent order terms, and calculated the monetary amounts. It was not until nearly six months after first submitting the agreement to the district court for approval—and five months after it was approved—that the Secretary first discovered any error. It is well-established that carelessness or a lack of due care on the part of a litigant or her attorney does not provide a basis for relief under Rule 60(b). *See Western Transportation Co. v. E.I. DuPont DeNemours & Co.*, 682 F.2d 1233, 1236 (7th Cir.1982); *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir.1972). In *Bershad*, the defendant and his attorney

miscalculated by 10,000 the number of shares of stock set out in an earlier district court judgment, resulting in a $22,000 mistake in the judgment. According to the defendant, "he and his counsel had previously been too involved with the complexities of the litigation to notice the error...." 469 F.2d at 1335. This court affirmed the district court's denial of relief: "Neither ignorance nor carelessness on the part of a litigant or his attorney will provide grounds for Rule 60(b) relief." *Id.* at 1337 (citations omitted). Likewise, in *Western Transportation*, we affirmed the district court's denial of Rule 60(b) relief because of a party's careless mistake. In *Western Transportation*, the plaintiff's consultant made a $23,000 error in calculating the plaintiff's damage demand. The plaintiff's attorneys inexplicably failed to check these calculations. 682 F.2d at 1236.

In these circumstances it was well within the district court's discretion to decline to increase the judgment. In fact it would probably have been an abuse of his discretion to have granted the motion. A negligent mistake, that is one evincing a lack of due care, is not a proper ground for relief under Rule 60(b). *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir.1972). What is due care depends on the cost of an increment of care in relation to its expected benefits. If [appellant's] consultant or attorneys had spent just a few more hours checking their computations before the complaint was filed, or at least before judgment was entered, rather than waiting till after judgment was entered to do so, they would have been able to increase the judgment by more than $27,000.... It would have cost no more to check earlier than later. [Appellant's] mistake was careless and bars relief under Rule 60(b). *Id.* Here, the district court concluded that the Secretary's mistake was like those in *Western Transportation* and *Bershad*, a mistake demonstrating carelessness.

There is no evidence to suggest otherwise. The district court's determination in this regard was not an abuse of discretion.

### III.

Faced with a probable loss under this court's Rule 60(b) negligence standards, the Secretary vigorously urges that this case be analyzed on the basis of contract principles. Consent decrees are contracts. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–37, 238, 95 S.Ct. 926, 934–35, 935, 43 L.Ed.2d 148 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971); *Ferrell v. Pierce*, 743 F.2d 454, 461 (7th Cir.1984). Even if the Secretary could bypass the negligence standards as set out by *Western Transportation* and *Bershad*, the application of contract principles will not save the Secretary's case.

■ The Secretary contends, under her contract analysis, that this is a case of mutual mistake.[2] A contract may be rescinded under the mutual mistake doctrine: "Where both parties share a common assumption about a vital existing fact upon which they based their bargain and that assumption is false, the transaction may be avoided if, because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated...." J. Calamari & J. Perillo, Contracts § 9–26 (3d ed. 1987). But "[t]he party alleging mutual mistake must convince the judge, and convince him clearly." *Patton v. Mid–Continent Systems, Inc.*, 841 F.2d 742, 746 (7th Cir.1988).

■ The district court rejected the Secretary's claim of mutual mistake. Both in the district court and on appeal, the defendants have consistently maintained there was no mutual mistake. According to the defendants, the potential loss figure formula and its application were not vital facts upon which they based their bargain; their

---

2. The Secretary also contends, under contract analysis, that this is a case of unilateral mistake. The Secretary did not claim unilateral mistake in the district court. In fact, in the district court, the Secretary explicitly denied that this was a case of unilateral mistake. Failure to raise an issue in the district court results in its waiver on appeal. *Reynolds v. Bowen*, 844 F.2d 451, 453 (7th Cir.1988); *Morris v. Jenkins*, 819 F.2d 678, 681 (7th Cir.1987) (per curiam).

primary concern was the bottom line—the dollar amount they would be obligated to pay. By affidavit, the President of NorCen Bank stated that NorCen Bank, which was ultimately responsible for the payment, was concerned only with the actual amount of liability against the bank. Further, according to the affidavit, NorCen Bank did not intend to agree and would not have agreed to a potential loss figure of $950,-000. Under this analysis, there was no mutual mistake; the parties did not share a common assumption about a vital fact upon which they based their bargain. While the Secretary may have relied upon the potential loss figure formula, the defendants relied upon the potential loss figure amount —$503,259—the figure set out in the consent decree.[3]

## IV.

The district court did not abuse its discretion in denying the Secretary's Rule 60(b) motion to correct the Secretary's own mistake in the consent order. The Secretary failed to convince the district court on the mutual mistake theory and the court's rejection of the Secretary's scenario was no abuse of discretion.

AFFIRMED.

---

**3.** At oral argument, a member of the panel presented the following hypothetical. Suppose the Secretary proposed a settlement of $100,000 and the bank countered with a $50,000 compromise. The Secretary then sent a consent decree with a settlement figure of $10,000. Under that scenario, when the bank received the decree containing a figure lower than its lowest bid, wouldn't the bank have to know something was wrong? The Secretary's attorney responded that this is *not* what happened in this case. "Instead, we made an offer as to how the losses could be calculated. They made a counter-offer as to how the losses could be calculated. We rejected that counter-offer, and then we happened to be the one that calculated what the formula meant...."