PHONE PARTNERS LIMITED PARTNERSHIP and Anthony W. Czarnik, its general partner, Plaintiffs-Counterclaim-Defendants-Appellants, †

v.

C.F. COMMUNICATIONS CORPORATION, Defendant-Third Party Plaintiff-Respondent,

v.

COCHRAN, FOX & COMPANY, INC., Third Party Defendant-Respondent.

Court of Appeals

*No. 94–2279. Submitted on briefs June 1, 1995.—Decided August 16, 1995.*

(Also reported in 542 N.W.2d 159.)

†Petition to review denied.

704

On behalf of the plaintiffs-counterclaim defendants-appellants, the cause was submitted on the briefs of *David J. Van Lieshout* of Little Chute.

On behalf of the defendant-third party plaintiff-respondent, the cause was submitted on the brief of *Ralph J. Ehlinger* of *Ehlinger & Krill, S.C.* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. Phone Partners Limited Partnership appeals from a trial court judgment dismissing its complaint against C.F. Communications Corporation (CFCC) pursuant to the terms of a stipulated settlement agreement. Phone Partners contended that CFCC had not complied with the terms of the stipulation. As a result, it brought a motion for enforcement of the stipulation and for damages. The trial court determined that Phone Partners had not provided CFCC timely notice of the alleged noncompliance. The court therefore declined to conduct an evidentiary hearing on Phone Partners' alleged damages. Instead, the court entered an order dismissing Phone Partners' complaint pursuant to the stipulation.

We conclude that the trial court did not misuse its discretion when it refused to conduct an evidentiary hearing on the issue of CFCC's alleged noncompliance. We affirm the judgment dismissing Phone Partners' complaint.

BACKGROUND

During 1986, Phone Partners and CFCC entered into two separate lease agreements whereby Phone Partners provided coin-operated telephones to CFCC. The telephones were then placed in various business locations by CFCC. On August 27, 1992, Phone Partners brought this action alleging that CFCC had breached the agreements by failing to make the monthly payments called for in the agreements. Phone Partners sought damages of approximately $1.4 million, repossession of the telephones and related equipment, and other relief. The dispute between the parties had also inspired other litigation in other forums.

On the day before this case was scheduled for jury trial, the parties entered into a settlement stipulation which was placed upon the record and approved by the trial court. The stipulation settled all matters pending between the parties. Among other provisions, the stipulation required CFCC to return four hundred "working" telephones in two shipments of two hundred phones each and to pay Phone Partners a total of $45,000, payable in an initial installment of $10,000 with remaining payments of $5000 per month plus one percent interest on the declining balance. Upon CFCC's compliance with the stipulation, all matters pending between the parties were to be dismissed and the parties would execute appropriate releases.

CFCC returned the telephones on July 23 and August 12, 1993, in compliance with the stipulation. CFCC made the first monthly payment to Phone Partners in August 1993 and, in accordance with the stipulation, made all of the successive monthly payments by check. Except for the final payment in March 1994, Phone Partners cashed all the checks. On March 25, 1994, per the stipulation, CFCC tendered the appropriate releases and stipulation for dismissals of the pending litigation to Phone Partners. On May 4, 1994, Phone Partners advised CFCC that it would not execute the documents because the telephones were not in working order.

CFCC responded with a motion for enforcement of the stipulation. Phone Partners responded with its own motion for enforcement of the stipulation, seeking an evidentiary hearing on its further claim for $55,000 in damages as the alleged cost for repairing the telephones.

In support of its motion, Phone Partners relied on the following history. In October 1993, it had entered an agreement to provide a third party with some of the returned telephones. From November 1993 to January 1994, the third party complained that the telephones were not working properly. Consequently, Phone Partners had the telephones inspected and repaired. Phone Partners notified its attorney of the problem. The attorney counseled that Phone Partners should investigate further before attributing the problems to CFCC. Upon advice of its attorney, Phone Partners did not cash CFCC's final check tendered in March 1994.

At the hearing on the parties' motions, CFCC argued that Phone Partners had not provided adequate and timely notice of the alleged defects. After granting Phone Partners time to file a brief on the question, the

trial court ruled at a later hearing that Phone Partners' complaints regarding the condition of the telephones had not seasonably been brought to CFCC's attention. In making this ruling, the court relied on relevant provisions of the Uniform Commercial Code (UCC). Therefore, the court declined to conduct an evidentiary hearing as to whether the telephones were in working order. Phone Partners appeals.

DISCUSSION

The trial court concluded that Phone Partners' objection to the condition of the telephones had not been "seasonably brought" under the UCC. Section 402.602(1), STATS., provides that the "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Section 402.606(1), STATS., provides, "Acceptance of goods occurs when the buyer: . . . (b) Fails to make an effective rejection (s. 402.602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them."

Phone Partners argues that the trial court erroneously relied on these provisions of the UCC when rejecting its request for an evidentiary hearing as to whether CFCC had complied with the stipulation. Phone Partners contends that this case concerns a stipulation, not a contract under the UCC. Thus, Phone Partners reasons that the waiver, estoppel and laches implications of the UCC provisions upon which the trial court relied are inapplicable. CFCC responds that the stipulation is a contract, and must be interpreted under the UCC or common law contract law.

708

We conclude that the correct answer lies in between the parties' opposite positions on this issue. And, the answer also implicates our standard of review which we first address.

A trial court may totally accept or reject a stipulation presented by the parties for its approval. *See Bliwas v. Bliwas,* 47 Wis. 2d 635, 638-39, 178 N.W.2d 35, 37 (1970). Until approved, it is no more than a recommendation to the court. *See id.* at 638, 178 N.W.2d at 37. Approval of a stipulation is within the trial court's discretion because once approved, it becomes the court's judgment. *See id.* at 639, 178 N.W.2d at 37. Therefore, when an order is entered pursuant to the consent of the parties to be bound thereby, it is considered a judicial act, subject to the court's continuing jurisdiction to modify the order. *Lueck's Home Improvement, Inc. v. Seal Tite Nat'l, Inc.,* 142 Wis. 2d 843, 848 n.4, 419 N.W.2d 340, 342 (Ct. App. 1987).

Similarly, stipulations of settlement may be enforced by the court and may only be avoided with the court's approval. *See* §§ 807.05,[1] 806.07(1), STATS.; *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 664, 273 N.W.2d 242, 248 (1979). The trial court is given discretion on whether to grant relief from a stipulation pursuant to § 806.07. The standards in § 806.07 are congruent with the equitable standards that permit a

---

[1] Section 807.05, STATS., provides:

No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court . . . and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

trial court to grant relief from a voidable contract, for example, mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation or other misconduct of an adverse party. *See Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 68, 452 N.W.2d 360, 366 (1990).

From this law, it is clear that questions regarding the initial approval and enforcement of a stipulation and relief therefrom are committed to the trial court's discretion. This includes the issue presented in this case: whether the trial court properly declined to conduct an evidentiary hearing on Phone Partners' complaint that CFCC did not return the telephones in working order and on Phone Partners' request for further damages.

Therefore, we review the trial court's ruling denying Phone Partners' request for an evidentiary hearing on its motion for enforcement of the stipulation as a discretionary act. An appellate court will sustain a discretionary act if the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).

In making its discretionary ruling, the trial court relied on the provisions of the UCC to which we have alluded. This brings us back to the question of the proper role of contract law in a stipulation setting. Because the matter is committed to the discretion of the trial court, we cannot hold, as CFCC argues, that contract law is binding on the trial court as to a stipulation question. However, neither can we agree with Phone Partners that contract law is irrelevant. To the

710

contrary, principles of contract law may sometimes illumine a stipulation dispute even to the point of being dispositive. *See Kocinski,* 154 Wis. 2d at 67, 452 N.W.2d at 365. Thus, a trial court may properly look to contract law for assistance in construing, enforcing or modifying a stipulation. *See, e.g., Oostburg State Bank v. United Savs. & Loan Ass'n,* 125 Wis. 2d 224, 234-35, 372 N.W.2d 471, 476 (Ct. App. 1985), *aff'd,* 130 Wis. 2d 4, 386 N.W.2d 53 (1986).

Turning to this case, we observe that by March 1994, CFCC had fully performed all of its obligations under the July 1993 stipulation. It had returned all the telephones, with the final shipment occurring in August 1993, and had paid all of the installment payments, including the final payment in March 1994. Not until May 1994 did Phone Partners notify CFCC that the telephones were allegedly defective.

In contrast, when Phone Partners received the telephones from CFCC in July and August 1993, it had the telephones stored in a separate storage facility in Appleton, Wisconsin. Before placing the telephones in storage, Phone Partners did not test them to determine if they were in working condition as agreed in the stipulation. Without inspecting the telephones, Phone Partners delivered fifteen of the telephones to a third party in October 1993. From November 1993 until January 1994, the third party complained about the condition of the telephones. It was only then that Phone Partners inspected the telephones returned by CFCC the previous year.

Given CFCC's full compliance with the delivery and payment provisions of the stipulation, coupled with Phone Partners' delay in reporting the alleged defects to CFCC, the trial court had a reasonable basis

for concluding that Phone Partners had not seasonably notified CFCC of any defects in the telephones. The trial court properly exercised its discretion by looking to the UCC for direction on this question. As we have noted, although the UCC was not binding, it did serve to illumine the inquiry. *See Kocinski*, 154 Wis. 2d at 67, 452 N.W.2d at 365. As such, the court was entitled to rely on those contract principles as dispositive on the discretionary issue presented.

*By the Court.*—Judgment affirmed.