228 Wis.2d 514 (1999)
598 N.W.2d 588
MILWAUKEE WOMEN'S MEDICAL SERVICE, INC., National Women's Health Organization of Summit, Inc. and Planned Parenthood of Wisconsin, Inc., Plaintiffs-Respondents,
v.
Joseph SCHEIDLER, Defendant-Appellant,
PRO-LIFE ACTION NETWORK, Jeffrey Gordon, Walter Clark Ross, William Olmstead, Charles Poehlman, Pastors' Emergency League, Dale Demary, David Liebher, Daniel Balint, James Sweatt and Robert Young, Sr., Defendants.
No. 98-1139-FT.
Court of Appeals of Wisconsin.
Submitted on briefs January 6, 1999.
Decided May 4, 1999.
*519 On behalf of the defendant-appellant, the cause was submitted on the briefs of David A. Saichek and Theodore B. Hertel, Jr. of Saichek & Hertel, S.C. of Milwaukee and Thomas Brejcha of Pro-Life Law Center, of counsel, of Chicago, Illinois.
On behalf of the plaintiffs-respondents, the cause was submitted on the brief of William B. Guis of Friebert, Finerty & St. John, S.C. of Milwaukee, Sara N. Love of National Women's Health Foundation, of counsel, of Arlington, Virginia, Kelly A. Hardy of Quarles and Brady, L.L.P. of Milwaukee and Jeffrey Hynes of Adelman & Hynes, S.C. of Milwaukee.
Before Wedemeyer, P.J., Fine and Curley, JJ.
WEDEMEYER, P.J.
Joseph Scheidler appeals from a trial court order granting the motion of Milwaukee Women's Medical Services, Inc., National Women's Health Organization of Summit, Inc., and Planned Parenthood of Wisconsin, Inc., (collectively referred to hereafter as Summit) to reopen and amend a previously entered order for dismissal pursuant to § 806.07, *520 STATS. Because the trial court failed to apply the relevant law to the facts, this court concludes that the trial court erroneously exercised its discretion. Accordingly, the trial court's order is reversed and the cause remanded.[1]

BACKGROUND
On August 25, 1997, Summit commenced an injunction action against Scheidler and fifty-two other parties seeking to enjoin them from "impeding and/or blockading the entrances to plaintiffs' facilities and intimidating and harassing plaintiffs' patients and staff." Summit sought compensatory and punitive damages as well as temporary and permanent injunctive relief. After the trial court entered an order denying Summits' motion for temporary relief, amended pleadings were filed. On December 1, 1997, Summit and Scheidler executed and the trial court approved and entered a "STIPULATION AND ORDER FOR DISMISSAL." The stipulation provided in pertinent part that the parties:
hereby stipulate that all claims against said defendant relating to conduct which occurred prior to the signing of this stipulation are hereby dismissed as to Milwaukee Women's Medical Services, Inc., National Women's Health Organization of Summit, Inc., and Planned Parenthood of Wisconsin, Inc., with prejudice and without costs or fees to the respective parties.
The order, echoing the language of the stipulation, provided:

*521 [A]ll claims against defendant Joseph Scheidler relating to conduct which occurred prior to the signing of this stipulation are hereby dismissed as to Milwaukee Women's Medical Services, Inc., National Women's Health Organization of Summit, Inc., and Planned Parenthood of Wisconsin, Inc., with prejudice and without costs or fees to the respective parties.
In February 1998, Scheidler submitted the Milwaukee County circuit court's order in a federal class action case, arguing that Summit, a class representative in the twelve-year-old federal lawsuit against Scheidler and others,[2] was collaterally estopped from continuing its claims against Scheidler in light of Summit's stipulation and the circuit court's order to dismiss all claims against Scheidler relating to his conduct prior to December 1, 1997. Summit then filed a motion pursuant to § 806.07(1), STATS., to reopen and modify the trial court's order dismissing Scheidler from the Milwaukee County suit.
Summit's motion and supporting papers alleged that it was entitled to relief under § 806.07(1)(a), (c) and (h), STATS.[3] Summit alleged that it was entitled to *522 relief under § 806.07(1)(a) because counsel for Summit was not involved in the federal litigation, pending in Illinois, and drafted the broad language of the stipulation in this case as a result of counsel's excusable neglect and inadvertence. Alternatively, Summit argued that it was entitled to relief under § 806.07(1)(c) due to the alleged "misrepresentation" by Scheidler's counsel regarding his intent to use the favorably broad language in the Milwaukee County circuit court order to Scheidler's advantage in the pending federal litigation. Finally, Summit requested relief under § 806.07(1)(h), contending that Scheidler's use of the order for dismissal in the federal case was an "`extraordinary circumstance' entitling [Summit] to reopen the order of dismissal and obtain a partial modification."
At the conclusion of the hearing on Summit's motion to reopen, the trial court summarized Summit's predicament: "[Summit] seeks to undo the stipulation and the resulting order and the resulting judgment based upon a failure of the attorney who negotiated the agreement to foresee certain legal consequences of the stipulation." While the trial court agreed with Scheidler that this oversight by Summit's counsel was not excusable neglect under § 806.07(1)(a), STATS., and that there was no evidence in the record to support Summit's contention that Scheidler's counsel misrepresented his intention under § 806.07(1)(c) when the stipulation was executed, the trial court, nevertheless, granted Summit's motion. The trial court reasoned that a new order containing language more precisely reflecting the intent of the parties was justified in light of "the court's responsibility to do justice, responsibility *523 to act if there is mistake or inadvertence." Apparently relying on principles of contract law, the trial court explained that it "would be perverse for me to stick the parties to that language when it was never the intent of the plaintiff to agree to that language." The trial court further defended its decision by characterizing the collateral consequences of the stipulation's broad language as a "windfall" for Scheidler upon which his counsel was attempting to "capitalize" in the pending federal litigation. The trial court did not address Summit's motion for relief pursuant to § 806.07(1)(h), STATS.
On February 26, 1998, the circuit court entered an "ORDER FOR DISMISSAL." It provided in pertinent part:
That pursuant to sec. 806.07(1), Wis. Stats., the stipulation between the parties for the Dismissal of Joseph M. Scheidler, entered into on December 1, 1997, is vacated and the Order of the Court signed on December 1, 1997 concerning the dismissal of defendant Scheidler is reopened and modified, pursuant to Section 806.07(1), Wis. Stats., to read as follows:
1. That any and all claims asserted in the Amended Complaint by plaintiffs Milwaukee Women's Medical Services, Inc., National Women's Health Organization of Summit, Inc., and Planned Parenthood of Wisconsin, Inc., against defendant Joseph M. Scheidler are dismissed on the merits and with prejudice.
....
5. That it is not the intent of this court that this order have any effect upon National Organization *524 for Women, Inc., et al. v. Joseph M. Scheidler, et al., Case No. 86 C 7888 in the United States District Court for the Northern District of Illinois, Eastern District.
Scheidler appeals.

DISCUSSION
[1]
"A trial court may totally accept or reject a stipulation presented by the parties for its approval." Phone Partners Ltd. Partnership v. C.F. Communications Corp., 196 Wis. 2d 702, 709, 542 N.W.2d 159, 161 (Ct. App. 1995). Upon the circuit court's approval of the recommended stipulation, it becomes the court's judgment. See id. Accordingly, when an order is entered pursuant to the stipulation of the parties, "it is considered a judicial act, subject to the court's continuing jurisdiction to modify the order" pursuant to § 806.07(1), STATS. Id. at 709, 542 N.W.2d at 161.
[2-4]
A motion for relief pursuant to § 806.07(1), STATS., is addressed to the trial court's discretion. See id. at 709, 542 N.W.2d at 161. "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." Hartung v. Hartung, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Additionally, "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." Id. "Because `the exercise of discretion is not the equivalent of unfettered decision-making,' the record on appeal must reflect the circuit court's reasoned *525 application of the appropriate legal standard to the relevant facts in the case." Hedtcke v. Sentry Ins. Co., 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982) (citation omitted).
The trial court, focusing on Summit's contribution to the drafting problem, properly rejected Summit's legal argument that its failure to recognize the potential collateral consequences of its own drafting amounted to excusable neglect. Cf. McLaughlin v. Jung, 859 F.2d 1310, 1312-13 (7th Cir. 1988) (carelessness or lack of due care on the part of a litigant or an attorney in negotiating a settlement is no basis for granting relief under federal rule governing motions for relief from judgment).[4]
[5]
The trial court reasoned next that Summit's conduct in creating the potentially grave consequences flowing from its drafting error was "inadvertent" under § 806.07(1)(a), STATS. However, the trial court applied the term too broadly since virtually any failure on the part of an attorney to predict and appreciate the potential collateral legal consequences of his or her own proposed settlement language results, at least in part, from inadvertence. The adoption of such an all-encompassing definition of inadvertence in § 806.07(1)(a), STATS., would deprive its coequal statutory term "excusable neglect" of most of its meaning. Accordingly, we cannot accept the trial court's analysis. See State ex rel. Reimann v. Circuit Court for Dane County, 214 *526 Wis. 2d 605, 619, 571 N.W.2d 385, 390 (1997) (construction of a statute that renders part of it meaningless must be avoided since courts are obligated to avoid construction that renders portion of statute superfluous).
[6, 7]
The trial court also relied on principles of contract law to vacate the original stipulation and order and to enter the subsequent order of dismissal. A trial court, addressing a motion to reopen an order predicated on a stipulation, "may properly look to contract law for assistance in construing, enforcing or modifying a stipulation." Phone Partners, 196 Wis. 2d at 711, 542 N.W.2d at 162. It follows that it was not improper for the court to inquire into the validity of the assent of the parties at the time that they agreed to the stipulation. However, a party's mistake as to the scope, meaning or impact of a written instrument is a ground for attacking the validity of a contract only if the mistake is based on a past or present fact. See Continental Cas. Co. v. Wisconsin Patients Compensation Fund, 164 Wis. 2d 110, 118, 473 N.W.2d 584, 587 (Ct. App. 1991).
[8]
Here, the mistake allegedly made by counsel was not based on a fact, but rather was based on Summit's mistake of law when its counsel failed to consider the potential legal consequences of the original stipulation's broad language. Accordingly, the trial court's effort to grant relief to Summit by characterizing this broad language as evidence of a mutual mistake in drafting was an error of law. Such an error of law amounts to an erroneous exercise of discretion. See State v. Hutnik, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968) (misapplication or erroneous view of the law is an erroneous exercise of discretion).
*527 [9]
We conclude further that the trial court erred in its attempt to divine the parties' intent in drafting the stipulation when it addressed Summit's claim to relief under § 806.07(1)(c), STATS. This error occurred when the trial court determined that the record contained no facts or admission supporting Summit's contention that Scheidler's counsel harbored an intent prior to December 1, 1997, to use the broad language of the stipulation, drafted and submitted for approval by Summit's counsel, to defeat the pending federal litigation. While a trial court may consider extrinsic evidence of the parties' intent regarding a contract or stipulation, the court may only do so after first concluding that the contract language at issue is ambiguous. See Hope Acres, Inc. v. Harris, 27 Wis. 2d 285, 291, 134 N.W.2d 462, 465, (1965). No such determination was made by the trial court. To the contrary, the court appeared at one point to recognize that the relevant language of the stipulation was plain: "[T]he plaintiff entered into a stipulation which seems on its face to have clearly released Mr. Scheidler from anything having arisen earlier with respect to the claims made by Summit...." Accordingly, the trial court's resort to extrinsic evidence to address Summit's request for relief under § 806.07(1)(c), STATS., resulted from an erroneous exercise of discretion.
[10]
Finally, we note that the circuit court's attempt to narrow the legal effect, if any, of its second order by adding language explaining the circuit court's own intent that the order not "have any effect upon National Organization for Women, Inc., et al. v. Joseph M. Scheidler, et al., Case No. 86 C 7888 in the United States District Court for the Northern District of Illinois, *528 Eastern District" amounted to dicta. A court rendering a first judgment does not have the power to determine that judgment's effect; the successor court will make its own decision. See Midway Motor Lodge of Elk Grove v. Innkeeper's Telemanagement & Equip. Corp., 54 F.3d 406, 409 (7th Cir. 1995).
[11]
In light of the foregoing discussion, this court concludes that the trial court's February 26, 1998 "ORDER FOR DISMISSAL" must be reversed. Because the trial court did not address Summit's motion and supporting affidavit requesting relief from the original stipulation and order pursuant to § 806.07(1)(h), STATS., at the hearing or in its February 1998 order for dismissal, we remand this matter to the trial court.[5]
By the Court.Order reversed and cause remanded with directions.
FINE, J. (concurring in part; dissenting in part).
I agree with the majority that:
 The trial court "properly rejected [the plaintiffs'] legal argument that [their lawyer's] failure to recognize the potential collateral consequences of [her] own drafting amounted to excusable neglect," and that thus the plaintiffs were not entitled to relief under RULE 806.07(1)(a), STATS. See Majority at 525.

*529  The trial court erred when granted relief to the plaintiffs under RULE 806.07(1)(c), STATS. See Majority at 527.
 The trial court could not affect how the United States District Court for the Northern District of Illinois hearing National Organization for Women, Inc. v. Scheidler will interpret or apply the parties' stipulation or the trial court's order based on that stipulation. See Majority at 527-28.
There is thus no reason to remand. The original stipulation and order has disposed of the Milwaukee County litigation, and neither side in that litigation complains about how that original stipulation and order has affected that litigation. I would leave to the judge hearing the Illinois federal case the matters raised by this appeal and the issue to be considered by the trial court on remand. Thus, although I agree with the majority that we should reverse the trial court's attempt to pull the plaintiffs' chestnuts from the Illinois fire, I see no reason for a remand.[1]
NOTES
[1] This is an expedited appeal under RULE 809.17, STATS.
[2] This lawsuit is described in the appellant's appendix as "[a] federal action [that] is pending before ... the United States District Court for the Northern District of Illinois, Eastern Division, Case number 86 C 7888."
[3] 806.07 Relief from judgment or order. (1) On motion and upon such terms as are just, the court ... may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;
....
(c) Fraud, misrepresentation, or other misconduct of an adverse party;
....
(h) Any other reasons justifying relief from the operation of the judgment.
[4] Federal Rule of Civil Procedure 60(b) is the basis for § 806.07(1), STATS. "[W]here a Wisconsin Rule of Civil Procedure is based on a Federal Rule of Civil Procedure, decisions of the federal courts, to the extent they show a pattern of construction, are considered persuasive authority." Neylan v. Vorwald, 124 Wis. 2d 85, 99-100, 368 N.W.2d 648, 656 (1985).
[5] We decline to address this issue on our own motion since it would involve the exercise of discretion. See Barrera v. State, 99 Wis. 2d 269, 282, 298 N.W.2d 820, 826 (1980) (an appellate court must not exercise the trial court's discretion).
[1] I also disagree with the majority's conclusion that the trial court did not consider RULE 806.07(1)(h), STATS. The trial court did, noting that in it's view, as phrased by the majority, "the stipulation's broad language [w]as a `windfall' for Scheidler upon which his counsel was attempting to `capitalize' in the pending federal litigation." Majority at 523. This appears to me to be the trial court's reference to RULE 806.07(1)(h)'s "[a]ny other reasons justifying relief." To permit relief under this "any other reasons" clause for collateral consequences of what an attorney may or may not have foreseen in drafting a legal instrument would, as the majority implicitly recognizes, make the validity of every legal instrument hostage to retrospective regrets, and would be contrary to the established rule that, absent mutual mistakes based on past facts, written documents are enforced as they are written, not as the parties might wish them to read. See Gorton v. Hostak, Henzl & Bichler, 217 Wis. 2d 493, 506, 508-509, 577 N.W.2d 617, 623, 624 (1998).