COURT OF APPEALS
DECISION
DATED AND FILED

December 18, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1407**

Cir. Ct. No. **2014CV104**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

DAVID A. GEORGE AND SUSAN M. GEORGE,

   PLAINTIFFS-APPELLANTS,

  V.

MARK R. TRIATIK,

   DEFENDANT-RESPONDENT,

RURAL MUTUAL INSURANCE COMPANY,

   DEFENDANT.

APPEAL from an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. David A. George and Susan M. George appeal from an order of the circuit court (1) denying their motion to enforce the terms of a settlement agreement against neighboring property owner, Mark R. Triatik; (2) granting Triatik's motion to enforce the settlement agreement against the Georges; and (3) determining that the settlement agreement did not allow the Georges to recover consequential damages for Triatik's earlier default of performance. The Georges argue that the circuit court improperly relied on a neutral third-party engineer's verification of performance in determining compliance with the settlement agreement's terms. For the reasons that follow, we affirm.

## BACKGROUND

¶2     The Georges and Triatik own neighboring properties which are located within a shoreland zoning area containing wetlands. In 2014, the Georges sued Triatik, claiming that his construction and landscaping activities constituted nuisance, negligence, and trespass. Triatik counterclaimed for trespass. On the fourth day of trial, both sides stipulated to voluntary dismissal of all claims on the record after all of the parties signed a written settlement agreement.

¶3     The settlement agreement provided for the parties' engineers to develop a "Remediation Plan" that would include the construction of a large berm along the parties' shared lot line so as to contain water on the Triatik property. Aware that a variety of disputes could arise, the comprehensive settlement agreement included (1) procedures for reaching agreements about the remediation plan and verification of each party's work provisions, (2) an agreement to escrow

funds to guarantee performance, (3) a requirement of notice and opportunity to cure any alleged default, and (4) specific remedies for default.

¶4      The parties agreed to a remediation plan, but problems developed as Triatik attempted to obtain work permits for wetland areas.  The Georges filed a motion to enforce the settlement agreement.  Triatik filed a motion for partial relief from the settlement agreement on grounds that construction of the berm had become "legally impossible" due to the denial of a necessary permit.

¶5      The parties reached an agreement to revise the remediation plan, which they called "Alt 1" in an explanatory letter to the court.  Triatik withdrew his motion for relief.  The Georges continued to pursue their motion to enforce, seeking consequential damages for Triatik's earlier default in connection with the now-abandoned remediation plan. The circuit court found that Triatik's prior noncompliance constituted a default, but stated that briefing was necessary as to "whether the Georges can even recover damages [for the breach] where it's not provided in this settlement agreement."  After briefing, the circuit court determined that the settlement agreement did not provide for the recovery of consequential damages by either party for default in completion of the remediation plan.

¶6      In July 2017, Triatik sent his written notice of completion.  The parties and their engineers selected Anthony Lulloff as a third-party engineer to verify their work pursuant to the settlement agreement.  Triatik sent the Georges a notice of default, citing the need for the Georges to add fill and to create a swale and spillway on their side of the berm.

¶7      Lulloff conducted a survey and submitted a written report.  Triatik filed a motion asking the court for an order (1) declaring his work complete under

the settlement agreement, (2) requiring the Georges to complete performance of their obligations under the settlement agreement, and (3) requiring the Georges to pay Triatik's attorney fees for the instant motion. Triatik asserted that Lulloff's survey and report confirmed three areas of nonconformity on the Georges' side of the berm and noted no nonconformities on Triatik's side.

¶8 Despite Lulloff's verification, the Georges did not cure the nonconformities and instead filed a motion to enforce against Triatik. The Georges disputed Lulloff's verification and requested an evidentiary hearing on whether Lulloff's conclusions were correct. The circuit court denied the Georges' request for an evidentiary hearing, stating that pursuant to the settlement agreement, the third-party neutral engineer "has the final word on whether the Alternative 1 remediation plan is performed." Emphasizing the need for finality, the court decided as follows:

> The engineers had picked Lulloff. Lulloff is going to go out there. He's going to do what he's got to do without either side telling him what to do or how to do it. He will submit to me a report as to whether the parties have or have not done what they're suppose[d] to do. Each side will pay one-half of the costs. And his opinion will be the end.

¶9 Lulloff filed another verification report concluding that the Georges were in default, and, after a hearing, the circuit court granted Triatik's motion to enforce, awarded Triatik attorney fees for prevailing, denied the Georges' motion to enforce, and awarded attorney fees to the Georges for prevailing on the prior year's enforcement motion. The court also ordered Lulloff or a third party selected by him to complete the Georges' performance at the Georges' cost. The Georges appeal.

4

## DISCUSSION

*Under the terms of the settlement agreement, the Georges were not entitled to seek consequential damages as a remedy for Triatik's default.*

¶10    The Georges argue that the circuit court erred in determining that they were not entitled to consequential damages as a remedy for Triatik's default under the settlement agreement.  The interpretation of a stipulation is a question of law reviewed de novo.  ***Horizon Bank, N.A. v. Marshalls Point Retreat, L.L.C.***, 2018 WI 19, ¶30, 380 Wis. 2d 60, 908 N.W.2d 797.  Questions regarding the initial approval and enforcement of a stipulation and relief therefrom are committed to the circuit court's discretion.  ***Phone Partners Ltd. P'ship v. C.F. Commc'ns Corp.***, 196 Wis. 2d 702, 709, 542 N.W.2d 159 (Ct. App. 1995).[1]

¶11    As did the circuit court, we look to the plain language of the stipulated settlement agreement to determine whether the Georges may seek consequential damages for Triatik's default.

¶12    Paragraph three of the settlement agreement, entitled "Escrow arrangements; Enforcement of Agreement," enumerates specific procedures and

---

[1] Much of the Georges' brief is devoted to analyzing whether the settlement agreement is a stipulation under WIS. STAT. § 807.05 (2017-18).  The purpose of their analysis is unclear and the suggestion that the settlement agreement is anything other than a court-approved stipulation under § 807.05 is unpersuasive.  To the extent the Georges are attempting to secure a de novo rather than a deferential review of the circuit court's decision disallowing consequential damages, their efforts are unnecessary.  As pointed out in Triatik's brief, the circuit court grounded its decision in a plain-language interpretation of the settlement agreement.  Hearing no objection from Triatik, we will independently review the question.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

remedies for default. Each party agreed to place $5000 in escrow "to guarantee" their performance, and further agreed as follows:

> If one of the parties believes that the other party is in default of the terms of this agreement, including a failure to meet time restrictions or a failure to complete the work according to the specifications of the Remediation Plan, that party may give the defaulting party written notice of default specifying in detail the nature of the default. The notice shall be sent to the defaulting party by certified mail, return receipt requested and faxed to … [opposing counsel]. The defaulting party shall cure the defect within 10 days of their attorney's receipt of the facsimile transmission. If the defaulting party fails to cure the default in the time allowed, the other party may file a motion to reopen the Litigation for the sole purpose of enforcement of this agreement. If the court finds that a party actually is in default, then the court may order completion of the default in performance by a 3rd party and payment for services of the 3rd party from the escrowed funds. If the cost of curing the default is in excess of the amount the defaulting party has in escrow, the Court can order the defaulting party to pay the difference as damages in this case. The court may also order payment of any attorney's fees assessed against a party for failure to perform this agreement from the escrowed funds. If proceedings are brought to enforce the terms of this agreement, the prevailing party shall recover actual, reasonable attorney's fees from the other Party. When the terms of this agreement have been fully carried out, each party shall give written consent to the attorneys of the other party to release any remaining escrowed funds to the party who escrowed them.

¶13 Triatik argues that the broad application of and detailed specifications within paragraph three evince the parties' intent to limit the remedies and damages available for default or nonperformance to those set forth in the settlement agreement. In further support, he points to preamble language indicating the parties' "desire to resolve their disputes on the terms more specifically set forth herein, thereby avoiding the burden, expense and uncertainty of continuing litigation," and paragraph six's reiteration that a party may move to

reopen the litigation "solely for the purpose of obtaining performance and enforcement" of the agreement's terms.

¶14    We agree that the plain language of the settlement agreement limits the available enforcement remedies to (1) an order for third-party completion of performance and payment for the third-party's services from the defaulting party's escrowed funds; (2) an order that the defaulting party pay third-party costs in excess of its escrowed funds as additional damages; and (3) an order that the defaulting party pay the prevailing party's actual, reasonable attorney fees for proceedings to enforce.  The enforcement provision is comprehensive and specific, and a key purpose of the agreement is to avoid continuing litigation.

¶15    The Georges argue that they are entitled to seek consequential damages because paragraph three uses the words "may" and "can" when authorizing the court to order the enumerated remedies.  We are not persuaded. That the settlement agreement affords the court discretion in whether to order third-party completion of work or payment of third-party services does not imply that other damages or remedies for default are available.  In fact, there is no reference in the settlement agreement to any additional remedies for default.

*The circuit court correctly enforced the parties' agreement for third-party verification.*

¶16    To address potential disagreements over compliance, the settlement agreement provided:

> As each Party completes the portion of the Remediation Plan affecting their property, the Party (the "Completing Party") shall notify the other Party in writing of the completion, with a copy to the Party's attorneys by facsimile.  Once notified of completion, the Parties shall each select an engineer and together the engineers shall

> agree upon appropriate professionals to inspect the property of the Completing Party and to verify that the specifications of the Remediation Plan for the Completing Party's property have been met.

Pursuant to these terms, Triatik sent the Georges written notice of completion and the parties' engineers selected Lulloff as the "appropriate professional[]" to inspect and verify compliance with the Alt 1 remediation plan. Lulloff surveyed the properties in November 2017 and filed a report in January 2018.

¶17 As of March 2018, despite Lulloff's verification, the parties were back in court on their respective enforcement motions, each alleging that the other party was not in conformity with the Alt 1 remediation plan. Dissatisfied with Lulloff's report, the Georges requested an evidentiary hearing where they could dispute the propriety of Lulloff's verification. The circuit court denied the request, agreeing with Triatik that according to the settlement agreement, the third-party neutral engineer "has the final word on whether the Alternative 1 remediation plan is performed." Referring to the settlement agreement, the court explained:

> It doesn't say, if you don't like it, then we'll have another hearing on it. It doesn't say that the engineers can tell the person [selected as third-party engineer] how to do the work. Because, if that was the case, this case would go on forever. We would have hearing after hearing after hearing where one side or the other would say, well, no, no, no, the third party didn't do it right or he didn't take this measurement or—and this case is already never ending. And it would continue on in perpetuity.

¶18 To achieve resolution, the court provided Lulloff with the settlement agreement and the Alt 1 remediation plan, asked him to visit the properties again, and instructed him to submit one last verification report advising whether "the Georges have done what they promised to do and whether Mr. Triatik has done what he promised to do." The court explained that the parties' engineers "will not

be contacting you and telling you how to do it" and that Lulloff should "do whatever you feel you have to do to reach those conclusions" regarding performance. The court advised Lulloff it was "very, very important" that he be as accurate and thorough as possible "because your report will be the last word on whether the Georges and/or Mr. Triatik are in compliance with what they have agreed to do." After receiving Lulloff's report, the circuit court would decide the pending enforcement motions.

¶19 The parties informed the court about potential sticking points, such as the notion that Alt 1 was impossible to build exactly as illustrated, and the Georges' position that they had no obligation to place fill on their side of the berm to achieve the grade specified in Alt 1. The court rejected the parties' attempts to have the court "interpret" Alt 1 for, or provide more specific direction to, Lulloff, explaining that the parties agreed in advance to have the third-party engineer verify completion.

¶20 Lulloff's final verification report concluded that Triatik's obligations had been performed and that the Georges were in default. The parties renewed their motions to enforce. At the hearing on performance, the court recited in detail the case's history and accepted Lulloff's conclusions.

¶21 On appeal, the Georges maintain their quarrel with Lulloff's verification work and suggest that the court's method of resolution improperly called on Lulloff to "interpret" rather than to "verify" the specifications in the Alt 1 plan. We are not persuaded. After extensive consideration of the parties' written and oral arguments, the circuit court explained repeatedly, in detail, and with citation to relevant legal authority, the many reasons it opted to rely on Lulloff's verification. The circuit court's rationale for denying the Georges'

request for an evidentiary hearing was thoroughly explained and well-supported by the facts of record, including the settlement agreement and Alt 1 remediation plan. The court's interpretation of the parties' settlement agreement was reasonable and it properly exercised its discretion in determining performance. *See Phone Partners*, 196 Wis. 2d at 709-10.

¶22 We also reject the Georges' argument that they had no obligation to perform work under the Alt 1 plan, which, they admit, was the revised remediation plan agreed to by both sides. The depictions on Alt 1 include a berm straddling the parties' properties and a swale on the Georges' property. When they proposed and agreed to Alt 1, the Georges agreed to complete that work regardless of the fact that the settlement agreement originally stated the berm would be on Triatik's property. *See Lakeshore Commercial Fin. Corp. v. Drobac*, 107 Wis. 2d 445, 458, 319 N.W.2d 839 (1982) ("[A]ny contract can be discharged or modified by the subsequent agreement of the parties.").

¶23 Similarly, the Georges' argument that they cannot be in default because there was no explicit deadline for their performance is a nonstarter. The circuit court correctly cited to *Delap v. Institute of America, Inc.*, 31 Wis. 2d 507, 512, 143 N.W.2d 476 (1966), for the proposition that, if there is no time reflected in an agreement for performance, then a reasonable time is implied in the agreement. The order finding the Georges in default was entered about one year after the parties agreed on Alt 1 and approximately eight months after they received their first notice of default from Triatik. The circuit court properly determined that a reasonable time for completion of the Georges' work had long passed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.