COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1458**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019GN104**

**IN COURT OF APPEALS
DISTRICT I**

IN THE MATTER OF THE GUARDIANSHIP OF M.D.:

RICHARD DALLEN,

RESPONDENT,

V.

KATHLEEN DALLEN,

APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge.  *Reversed and cause remanded with directions*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.   Kathleen Dallen appeals from an order of the trial court regarding guardianship proceedings for her mother, M.D.   The order appointed Kathleen as guardian of the person for M.D., and Richard Dallen, her brother, as guardian of M.D.'s estate.

¶2   Kathleen argues that the order on guardianship should be vacated because the trial court lost competency when it failed to complete a hearing on the petition for guardianship within the time frame required by statute.   She also argues that the trial court erred in failing to make findings regarding the evidence in the record, and in its grant of certain powers to the guardian of the estate.

¶3   We agree that the trial court lost competency to hear the petition by failing to complete a hearing on the petition within the statutory time frame.   We therefore reverse and remand this matter with directions to dismiss the order for guardianship.

## BACKGROUND

¶4   Richard filed a petition for guardianship of the estate of M.D. on March 12, 2019.   In the petition, he stated that M.D. had a financial durable power of attorney as well as a health care power of attorney, both of which were valid and activated.   Kathleen was the agent named in both documents.   However, Richard asserted that guardianship was necessary because as M.D.'s agent, Kathleen "refuse[d] to take [the] action necessary" to file M.D.'s income taxes, facilitate the claims process for M.D.'s long-term care insurance benefits, handle M.D.'s "complex financial affairs," and administer the Dallen 1996 Joint Revocable Trust.

¶5      A guardian *ad litem*, as well as adversary counsel, were appointed for M.D., and a hearing was initially set for May 16, 2019. Richard then filed an amended petition for guardianship on April 4, 2019, seeking his appointment as guardian of the person as well as guardian of the estate. The hearing date was changed to May 8, 2019.

¶6      On May 6, 2019, Kathleen filed an objection to the guardianship petition. The reasons cited in her objection were that the power of attorney documents—which were valid and activated—made a guardianship unnecessary. Kathleen also asserted that Richard being named guardian of M.D.'s estate would be a conflict of interest, as he had also been her financial advisor.

¶7      On the May 8, 2019 hearing date, adversary counsel for M.D. did not appear. The hearing was adjourned until May 23, 2019.

¶8      On the May 23, 2019 hearing date, adversary counsel for M.D. stated that M.D. objected to the guardianship petition. Counsel noted that the psychological evaluation conducted on M.D. on May 2, 2019, had indicated that she was unresponsive; M.D. was in the hospital for respiratory distress, and was intubated and unable to answer questions. However, counsel stated that she had met with M.D. a week before the May 23 hearing date, and her condition had improved to the point that she could answer questions. Therefore, counsel requested that the initial evaluation of M.D. be updated. Counsel also requested that an independent evaluation of M.D. be conducted as well, since she was objecting to the petition.

¶9      The parties agreed to adjourn the hearing so that a new evaluation of M.D. could be performed. In determining the time constraints they were working within, the trial court used the date of the amended petition—April 4, 2019—to

calculate the "drop dead date" for scheduling the hearing. That date was determined to be July 3, 2019; the hearing was then rescheduled for June 25, 2019.

¶10    At the June 25, 2019 hearing, the parties announced they had reached an agreement. They stipulated that Kathleen would be appointed M.D.'s guardian of the person, with Richard nominated as the standby guardian of the person; Richard was appointed guardian of M.D.'s estate, with Kathleen nominated as the standby guardian of the estate. The parties further agreed that both power of attorney documents would remain in effect, but that any conflicts would be resolved in favor of the authority of the respective guardian. Additionally, adversary counsel for M.D. stated that M.D. had withdrawn her objection to the guardianship, and that she agreed with the stipulation.

¶11    The trial court approved the parties' stipulation, and the corresponding order was entered on July 3, 2019. This appeal follows.

## DISCUSSION

¶12    Kathleen appeals from the order of the trial court that was based on the stipulation reached by her and Richard. The approval of a stipulation by the trial court is a discretionary decision "because once approved, it becomes the court's judgment." *Phone Partners Ltd. P'ship v. C.F. Commc'ns Corp.*, 196 Wis. 2d 702, 709, 542 N.W.2d 159 (Ct. App. 1995). We will uphold a trial court's discretionary decision "if the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 710.

¶13    Kathleen argues that because the date of the hearing—held June 25, 2019, after several adjournments—was outside of the statutory time frame for

4

hearing guardianship petitions, the trial court lost competency to act on this matter. The competency of the court "addresses its ability to undertake a consideration of the specific case or issue before it. The legislature confers a [trial] court's lesser powers, otherwise characterized as the court's 'competency.'" *State v. Minniecheske*, 223 Wis. 2d 493, 497-98, 590 N.W.2d 17 (Ct. App. 1998) (citation omitted). The "failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the [trial] court's competency to adjudicate the particular case before the court." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190. "Whether a [trial] court has lost competency to proceed on a matter is a question of law that we review *de novo*." *Cynthia K.-S. v. Richard H.*, 2014 WI App 123, ¶21, 359 Wis. 2d 204, 857 N.W.2d 432.

¶14 The statutory mandate is set forth in WIS. STAT. § 54.44(1)(a) (2017-18).[1] This statute states that "[a] petition for guardianship … shall be heard within 90 days after it is filed." Richard's initial guardianship petition was filed on March 12, 2019; therefore, the ninety-day "drop dead date" for a hearing from that filing date was June 10, 2019. However, Richard asserts that the ninety-day time frame began on the filing date of his amended petition: April 4, 2019. As noted above, this was the date used by the trial court in calculating the time constraints for the hearing that was scheduled for June 25, 2019. This argument requires us to interpret § 54.44(1)(a).

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶15 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. The intent of a statute "is primarily deduced from the language which the legislature has chosen to use." *Fond Du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 332, 440 N.W.2d 818 (Ct. App. 1989). "[T]he application of a statute to undisputed facts is a question of law, which we decide independently." *Kox v. Center for Oral & Maxillofacial Surgery, S.C.*, 218 Wis. 2d 93, 99, 579 N.W.2d 285 (Ct. App. 1998).

¶16 Richard asserts that his amendment of his initial petition was in like manner to filing an amended complaint and, as a result, the law relating to amended complaints should be applied to his amended petition. Specifically, he cites case law stating that the filing of an amended complaint supersedes an original complaint, and becomes the operative complaint for the proceedings. *See, e.g.*, *Holman v. Family Health Plan*, 227 Wis. 2d 478, 484, 596 N.W.2d 358 (1999). He asserts that as a result, all deadlines and obligations "triggered by the filing of an initial pleading—such as a deadline to file a response—are reset by the filing of an amended pleading." In support of his argument, he notes that there is a statutory time requirement for parties to respond to an amended pleading, even if they have already responded to the initial pleading.

¶17 We decline to make this leap. There is nothing that ties together the statute regarding amended complaints, set forth at WIS. STAT. § 802.09, with the procedures for filing guardianship petitions described in WIS. STAT. ch. 54. Furthermore, the procedures set forth in each of these statutes are not similar. The filing of a summons and complaint requires an action on the part of the other

6

parties involved, *see* WIS. STAT. § 802.06(1), as does the filing of an amended complaint, *see* § 802.09(1).

¶18    In contrast, when a guardianship petition is filed with the trial court, the court reviews it to ensure the required information of WIS. STAT. § 54.34(1) is included in the petition.  If the petition is accepted by the court, the petitioner is then ordered to provide notice to the proposed ward and any other interested persons at least ten days before the time set for the hearing on the petition.  WIS. STAT. § 54.38(2)(a)-(b).  No action is required by those receiving the notice; thus, time frames for objections or other responses are not contemplated.  Therefore, comparisons between these procedures are simply inapposite.

¶19    In fact, the application of this comparison would result in the hearing requirement of WIS. STAT. § 54.44(1)(a) being rendered largely meaningless, because allowing the hearing date to be reset upon amending the petition would essentially make the time constraint ineffectual.  Statutes must be interpreted "reasonably, to avoid absurd or unreasonable results."  *Kalal*, 271 Wis. 2d 633, ¶46.  Furthermore, the language of § 54.44(1)(a)—specifically, the use of the word "shall" for the mandate of a hearing within ninety days of filing the petition—supports this interpretation.  *See Cynthia K.-S.*, 359 Wis. 2d 204, ¶22 (recognizing that the use of the word "shall" in the statute "sets forth a mandatory requirement that the court must set a hearing date within 90 days of the filing of the petition").

¶20    Richard also argues that the agreement among the parties with regard to the adjournments of the hearing and the "drop dead date" calculation, made using the amended petition date rather than the date of the original petition, supports his interpretation of WIS. STAT. § 54.44(1)(a).  However, he concedes that the statute contains no provisions for tolling or staying the time limits, and the

"maxims of statutory construction" do not allow us to "add words to a statute to give it a certain meaning." ***Town of Rosendale***, 149 Wis. 2d at 334. Moreover, appellate courts "have consistently ruled that a court's loss of power due to the failure to act within statutory time periods cannot be stipulated to nor waived." ***Green Cty. DHS v. H.N.***, 162 Wis. 2d 635, 657, 469 N.W.2d 845 (1991).

¶21 We also reject Richard's argument that our interpretation would cause a conflict between WIS. STAT. § 54.44(1)(a) and the right of a proposed ward to have an independent evaluation performed, pursuant to WIS. STAT. § 54.42(3). In this case, M.D.'s adversary counsel did not request an independent evaluation until May 22, 2019—seventy-one days after the initial petition was filed. However, according to statements on the record by M.D.'s adversary counsel during the hearing on May 23, the delay in requesting an independent evaluation was due to M.D. being intubated and unresponsive, and therefore scheduling an independent evaluation earlier in the proceedings would have been fruitless. This problem is not indicative of a conflict between the statutes, but rather the result of the unfortunate circumstances of this case. Again, mandated statutory time frames that result in the trial court's loss of power cannot be stipulated to or waived. *See **H.N.***, 162 Wis. 2d at 657.

¶22 In sum, we conclude that the trial court's approval of the parties' stipulation—and the entry of the corresponding order relating to the guardianship petition—was an erroneous exercise of its discretion because it did not apply the correct legal standard for determining the time constraints for a hearing on the petition. *See **Phone Partners Ltd. P'ship***, 196 Wis. 2d at 709-10. The hearing was held outside of the mandatory ninety-day time frame set forth in WIS. STAT. § 54.44(1)(a) and, as a result, the court lost competency to hear this matter.

Therefore, we reverse and remand this matter with directions to dismiss the order for guardianship.[2]

        *By the Court.*—Order reversed and cause remanded with directions.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[2] With this decision, we do not reach Kathleen's other arguments regarding the trial court's failure to make findings regarding the evidence in the record and its grant of certain powers to the guardian of the estate. *See **Maryland Arms Ltd. P'ship v. Connell**,* 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").