STATE of Wisconsin, Plaintiff-Respondent,

v.

PEPPERTREE RESORT VILLAS, INC., and Peppertree
Resorts, Ltd., Defendants-Appellants.

Court of Appeals

*No. 01–2941. Submitted on briefs June 12, 2002.—Decided
July 25, 2002.*

2002 WI App 207

(Also reported in 651 N.W.2d 345.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jon G. Furlow* and *Ian A.J. Pitz* of *Michael Best & Friedrich LLP*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Gilles*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. VERGERONT, P.J.   This appeal concerns the administration of a restitution program that Peppertree Resort Villas, Inc. (Peppertree) and the Department of Agriculture, Trade and Consumer Protection (DATCP) agreed to in a consent order. Peppertree appeals the circuit court's decision that the consent order unambiguously allows DATCP to determine eligibility for the restitution program. Peppertree also challenges the court's finding that DATCP did not breach its duty of good faith and fair dealing implied in the consent order and the court's refusal to modify the

consent order. We conclude: (1) the consent order plainly authorizes DATCP to administer the program as long as it does so in a reasonable manner consistent with the terms of the consent order, and DATCP did so; (2) the circuit court's finding that DATCP did not breach its duty of good faith and fair dealing is supported by the evidence; and (3) the circuit court did not erroneously exercise its discretion in declining to modify the consent order. Accordingly, we affirm.

## BACKGROUND

¶ 2.  Peppertree is in the business of selling interests in time-shares in the Wisconsin Dells area. DATCP initiated an investigation of Peppertree after receiving consumer complaints. After Peppertree and DATCP came to an agreement that resolved DATCP's concerns, DATCP initiated this action, with Peppertree's consent, for the purpose of obtaining a court order based on the parties' stipulation.[1] The circuit court approved the stipulation and entered the consent order on October 12, 1999.

¶ 3.  Under the consent order, Peppertree was to pay $236,000 as a civil forfeiture for seventy-five violations of WIS. STAT. § 100.171 (1999–2000)[2] (relating to the award of prizes), WIS. STAT. ch. 707 (relating to time-shares), and WIS. ADMIN. CODE ch. ATCP 127 (relating to direct marketing). In addition, Peppertree was to pay $200,000 into a restitution fund to be adminis-

[1] Peppertree stipulated to the entry of the consent order without the service or filing of a summons and complaint and without further proceedings. Under both the stipulation and the consent order, Peppertree did not admit and expressly denied having engaged in any wrongdoing.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

tered by DATCP and $10,000 for administrative costs. The purpose of the restitution fund was to compensate persons who alleged they incurred economic harm as a result of their contacts with Peppertree. The consent order provided in relevant part:

> 5. Pursuant to Wis. Stats. ss. 100.171(8), 100.18(11)(a), 100.20(6), and 707.57(2)(a), Peppertree shall pay up to $200,000 into a restitution fund to be administered by [DATCP]. This money shall be paid out to persons who allege they incurred economic harm as a result of their contacts with Peppertree, and who [DATCP] determines to be eligible. [DATCP] shall determine the amounts to be paid from the fund to each person, except that no person shall be eligible for restitution who either purchased a time[-]share from Peppertree, or visited Peppertree to receive a prize or sales promotion, at anytime before January 1, 1998, unless the person is listed on the attached Exhibit A, which is incorporated in this Stipulation. Also, no person shall be eligible for restitution who notifies [DATCP] that it has been harmed by Peppertree more than 60 days after the date the Stipulation is executed.[3]
>
> . . . .
>
> 8. [DATCP] shall provide Peppertree with an opportunity to provide [DATCP] with factual information in its possession concerning individual complainants before [DATCP] pays out money from the fund.
>
> 9. [DATCP] shall make the final determination concerning the amounts to be paid out of the fund to eligible complainants.
>
> . . . .

---

[3] The stipulation was executed on October 5, 1999.

13. Before any person may receive money from the restitution fund, . . . the person must sign a release form . . ., which form is incorporated in this Stipulation.

(Footnote added.) Any amounts remaining in the fund were to be disbursed to Peppertree according to a formula set forth in the order.

¶ 4. The consent order provided that the court retained jurisdiction "for the purpose of enabling any party to the [s]tipulation to apply to the court at any time for the sole purpose of requesting such further orders or directions as may be necessary or appropriate for the construction or carrying out of th[e] Consent Order, or for enforcing compliance with it."

¶ 5. After the sixty-day time period for complaints ended, DATCP notified Peppertree that it had received approximately 395 complaints, although it had not completed a final review of eligibility for the restitution program. DATCP mailed a questionnaire to the time-share buyers who filed complaints that stated:

BUYER WORKSHEET – PEPPERTREE

DO NOT RETURN THIS FORM TO CONSUMER PROTECTION.

This form is designed to assist you or your private attorney in reviewing your transaction for compliance with Wisconsin's Timeshare Law relative to your private legal rights.

The questionnaire posed a series of questions concerning the buyer's transaction with Peppertree.

¶ 6. DATCP also notified 176 time-share buyers who had filed complaints that they "may be eligible for participation in a restitution program." The December 28, 1999 notice advised that the enclosed release had to

be returned to DATCP with other requested documents by January 17, 2000. The final paragraph stated:

> We anticipate issuing payment checks from the fund on or before June 1, 2000. If you are undecided about settlement participation, do not call [DATCP]. The decision to participate is a private one and only a private attorney can provide legal advice. If we do not receive the required materials by the date and time specified, we will assume you have chosen not to participate in the program. Thank you for bringing your complaint to our attention.

¶ 7. Eventually DATCP determined that fifty-three eligible time-share buyers had responded and elected to participate in the program. DATCP determined that these persons should share equally in the fund—which would mean for each buyer restitution in the amount of approximately 50% of out-of-pocket costs, less any amounts previously refunded by Peppertree; DATCP considered this a fair and reasonable amount for each person.[4]

¶ 8. In the meantime, on January 5, 2000, Peppertree filed a motion to have the court declare Peppertree's rights under the consent order. Peppertree also asked the court to enjoin DATCP from discrediting the restitution program and referring restitution program applicants to private attorneys to pursue remedies instead of participating in the restitution program; and to direct DATCP to reduce the restitution amount by the amount Peppertree pays to any person who contacted DATCP concerning the restitution program and who was eligible to participate, but who

---

[4] Of the restitution fund of $200,000, $22,000 was to be paid to forty-four eligible prize winners. That payment is not in dispute. This left $178,000 for eligible time-share buyers.

elected to pursue claims directly against Peppertree through a private attorney recommended by DATCP.[5]

¶ 9. At the evidentiary hearing on Peppertree's motion, Peppertree argued that the language of the consent order was plain—the money was to be distributed to the buyers DATCP determined to be eligible, and that meant the 176 time-share buyers identified on December 28, 1999. According to Peppertree, since only fifty-three buyers opted into the program, then 123/176 of the remaining sum in the restitution fund should be returned to Peppertree to deal with those buyers who were pursuing private lawsuits.[6] Alternatively, Peppertree asked the court to modify the terms of the consent order to expressly state this. A modification was justified on equitable grounds, Peppertree contended, because the conduct of DATCP undermined the purpose of the consent order in that it caused many of the 176 buyers to pursue private litigation.[7]

¶ 10. After taking testimony the court issued an order in which it concluded the consent order was not ambiguous. The court ruled that the plain terms estab-

---

[5] Peppertree subsequently filed a motion requesting that, in addition to the relief originally requested, the terms of the consent order creating the restitution program be declared void. However, at the initial hearing on Peppertree's motions, Peppertree informed the court that it was not seeking to have the program declared void, but was asking the court to determine how the fund should be allocated.

[6] The numbers referenced are the numbers both parties on appeal agree are correct.

[7] Neither in the trial court nor before this court has Peppertree separated its argument on enforcing the plain terms of the consent order from its argument seeking a modification of the terms. Like the trial court, we view them as distinct and alternative arguments, and so have described them accordingly.

lished a restitution program to be "administered by the [DATCP]"; authorized DATCP to determine eligibility; provided Peppertree with the opportunity to present factual information on claimants, but did not require DATCP to reach agreement with Peppertree on particular amounts; and provided that DATCP "shall make the final determination concerning the amounts to be paid out of the fund to eligible complainants." In addition, the court found there was no evidence that DATCP employees discouraged any eligible person from participating in the restitution program, recommended or encouraged persons who appeared eligible for the restitution program to forego the program and pursue private legal action, or recommended those persons to a particular lawyer.

¶ 11. The court also denied Peppertree's request to modify the consent order, referring to Wis. Stat. § 806.07. The court determined that Peppertree did not make a factual showing that DATCP representatives improperly discouraged persons from participating in the restitution program or recommended that persons retain particular attorneys and file private lawsuits instead of participating in the restitution program. The court determined Peppertree's proposal for payment to time-share buyers was not equitable in that it would deprive buyers of restitution in an amount DATCP considered appropriate, and DATCP's proposal for restitution was not arbitrary, capricious, or otherwise improper. Finally, the court determined that Peppertree's failure to anticipate the number of persons who would opt into the restitution program and the number who would pursue private actions did not constitute a basis for modification of the unambiguous consent order.

## DISCUSSION

*Construction of the Consent Order*

¶ 12.   On appeal, Peppertree renews its argument that the plain language of the consent order requires DATCP to pay money out of the restitution fund to all 176 buyers "eligible" to participate in the restitution fund, not just the fifty-three buyers who did not commence private litigation and who signed releases of all claims against Peppertree. Peppertree argues that the consent order does not provide that time-share buyers are not eligible to participate in the fund unless they return a release by a certain date, and the order does not permit DATCP to apportion the fund among only those persons who have not commenced private litigation.

■■■■

¶ 13.   The construction of a consent order is a question of law which we review de novo. *See Keller v. Keller*, 214 Wis. 2d 32, 37, 571 N.W.2d 182 (Ct. App. 1997) (discussing stipulations incorporated into a judgment). In the context of divorce, we have consistently recognized that principles of contract construction are applicable to a stipulation, which is contractual in nature, and that the court must seek a construction that gives effect to the parties' apparent intent. *See, e.g., id.*; *Rosplock v. Rosplock*, 217 Wis. 2d 22, 30–31, 577 N.W.2d 32 (Ct. App. 1998). With respect to a stipulation for settlement outside the divorce context, the court may consider principles of contract construction when construing the stipulation. *Phone Partners Ltd. P'ship v. C.F. Communications Corp.*, 196 Wis. 2d 702, 710–11, 542 N.W.2d 159 (Ct. App. 1995). We

conclude that principles of contract construction are applicable in construing this consent order.[8]

¶ 14.   When the terms of a contract are plain and unambiguous, we will construe the contract as it stands. *Keller*, 214 Wis. 2d at 37. Language is ambiguous if it is reasonably susceptible to more than one meaning, and only then may the court properly look to

---

[8] The State, citing to *Lueck's Home Improvement, Inc. v. Seal Tite National, Inc.*, 142 Wis. 2d 843, 847, 419 N.W.2d 340 (Ct. App. 1987), contends that in reviewing a decision regarding the administration of a restitution consent order, we should review to determine if the circuit court properly exercised its discretion. In *Lueck's*, the issue was whether the circuit court erroneously concluded the claimant was not entitled to restitution under the consent order because it did not comply with all its terms. Citing to *Burmeister v. Vondrachek*, 86 Wis. 2d 650, 664, 273 N.W.2d 242 (1979), this court stated a restitution consent order is not governed by contract law. *Lueck's Home Improvement, Inc.*, 142 Wis. 2d at 848. Because the circuit court had relied on contract law, we reversed to permit the circuit court to exercise its discretion in deciding what was equitable between the parties. *Id.* at 850. However, the supreme court later clarified that its statement in *Burmeister* was made in the context of rejecting the application of the statute of frauds to the requirements of a binding stipulation under Wis. Stat. § 807.05. *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 67, 452 N.W.2d 360 (1990). The court in *Kocinski* made clear that contract law often is applicable to settlement agreements. *Id.* Therefore, it is not correct to read *Lueck's* to hold that principles of contract construction do not apply to construing a consent order, particularly in view of the many recent cases that hold otherwise. *See, e.g., Keller v. Keller*, 214 Wis. 2d 32, 37, 571 N.W.2d 182 (Ct. App. 1997); *Phone Partners Ltd. P'ship v. C.F. Communications Corp.*, 196 Wis. 2d 702, 710–11, 542 N.W.2d 159 (Ct. App. 1995).

extrinsic evidence to determine the parties' intent. *Duhame v. Duhame,* 154 Wis. 2d 258, 266, 453 N.W.2d 149 (Ct. App. 1989).

██

¶ 15.  We conclude the consent order plainly provides DATCP with the authority to determine who is eligible and the amount of payment for participation in the restitution program. In addition, DATCP has the authority to administer the restitution fund. Therefore, as long as DATCP acts reasonably in exercising this authority, it is acting consistent with the terms of the consent order. We see nothing unreasonable in DATCP's decision to limit eligibility to those persons who:  (1) incurred economic harm as a result of their contacts with Peppertree; (2) purchased time-shares from Peppertree after January 1, 1998; and (3) notified DATCP within sixty days of the execution of the stipulation.

██

¶ 16.  With respect to the requirement that a person sign a release in order to be eligible, paragraph 13 of the consent order requires that before any person could receive money from the fund, the person was required to sign a release. It is true this requirement is not expressly labeled an "eligibility" requirement nor is it contained in paragraph 5, which discusses other eligibility criteria for the restitution program. However, reading the order as a whole, the only reasonable construction is that signing the release is an eligibility requirement. Therefore, DATCP was acting consistent with the terms of the consent order by requiring that persons sign a release of all claims against Peppertree related to the marketing and purchase of their time-share in order to receive a payment from the fund.

██

¶ 17.   Peppertree contends it should be entitled to offset settlements or judgments with private litigants who, except for failure to sign a release, are otherwise eligible to participate in the restitution program. Peppertree reasons that at the conclusion of litigation with Peppertree, these persons will effectively release any further claims against Peppertree either in connection with a settlement or by virtue of a judgment. Under DATCP's scheme, Peppertree points out, a portion of time-share buyers eligible to receive payment will have nothing to recover from the restitution fund when their litigation is finally settled. However, paragraph 13 of the consent order expressly requires a person to sign a release prior to receiving payment from the fund. There is nothing in the consent order that reasonably suggests the fund must be used to pay judgments or settlements that result from private litigation against Peppertree. DATCP's decision not to consider such litigants eligible for payments from the fund is therefore consistent with the terms of the consent order and within the authority given it by the plain terms of the order.

## Good-Faith and Fair Dealing

██

¶ 18.   Peppertree also contends that, even if DATCP did not breach any express terms of the consent order, it breached its duty of good faith and fair dealing implied in the consent order by directing complainants to private attorneys.[9] This, Peppertree contends, under-

---

[9] Peppertree contends that as a result of this breach of duty, "equity requires the restitution fund be distributed among the 176 buyers." Because we conclude there was sufficient evidence to support the circuit court's determination that DATCP did not

mined the purpose behind the restitution program—compensating time-share buyers who alleged they incurred economic harm as a result of their contacts with Peppertree. Peppertree cites to the testimony of two DATCP employees, David Tatar and Steven Foemmel, in support of its argument that DATCP manipulated and encouraged consumers to talk to private lawyers. Additionally, Peppertree refers to the questionnaire sent to buyers, which, according to Peppertree, "encouraged [a person] to visit a 'private attorney.' "

¶ 19. A party may be liable for a breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled. *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 796, 541 N.W.2d 203 (Ct. App. 1995). In considering whether a breach occurred, we review whether there is any credible evidence in the record to support the court's findings applicable to the good faith question. *See id.* When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony. *Teubel v. Prime Dev., Inc.*, 2002 WI App 26, ¶ 13, 249 Wis. 2d 743, 641 N.W.2d 461, *review denied*, 2002 WI 23, 250 Wis. 2d 559, 643 N.W.2d 95 (Wis. Jan. 29, 2002) (No. 01–1098). The reason for this rule is that the trier of fact had the opportunity to observe the witnesses and their demeanor. *Id.* When more than one

breach its duty of good faith and fair dealing, we need not decide whether the specific relief they seek is the proper remedy. We observe that the duty of good faith and fair dealing is implied in contracts. *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 796, 541 N.W.2d 203 (Ct. App. 1995). Both parties apparently agree that this principle of contract law applies to the terms of an order to which two parties have agreed.

reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Siker v. Siker*, 225 Wis. 2d 522, 528, 593 N.W.2d 830 (Ct. App. 1999) (citation omitted).

¶ 20.  "Good faith" is a term frequently defined in the negative, such as "the absence of bad faith." *Foseid*, 197 Wis. 2d at 796. The concept of good faith "excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981), *quoted in Foseid*, 197 Wis. 2d at 796. The following types of behavior have been recognized in judicial decisions as bad faith: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Section 205 cmt. d, *quoted in Foseid*, 197 Wis. 2d at 797.

¶ 21.  The circuit court found DATCP representatives did not discourage any person who appeared eligible from participating in the restitution program, did not recommend or encourage persons to forego the program and pursue private legal action, and did not refer eligible persons to, or recommend, a particular lawyer. Although these findings are not phrased in terms of DATCP's duty of good faith and fair dealing implied in the consent order, when read in context, they constitute a finding that DATCP did not breach that duty. We conclude there is sufficient evidence to support this finding.

¶ 22.  Foemmel testified he did not try to discourage time-share buyers from participating in the program nor did he tell them it was a bad program or his

opinion of the program. He stated that on about twenty occasions he was asked if the restitution program was a good idea, to which he replied that the person should discuss it with their family or a private attorney. He also stated that if a person asked for the name of an attorney to speak to, he did refer the person to a number of attorneys who specialized in time-share consumer law, in addition to providing a reference to the Wisconsin State Bar referral service. Since the consent order was entered, five persons received a letter from Foemmel concerning their request for the names of private attorneys who had represented owners in time-share complaints. In the letters, Foemmel gave the names of five attorneys experienced in time-share law and referenced the State Bar referral service. Of the five letters, four stated that the person was not eligible for participation in the program because they had purchased their time-share prior to January 1, 1998.

¶ 23.   Tatar testified that the December 28, 1999 letter sent to the 176 time-share buyers did not include the names of individual attorneys or a suggestion that people consider contacting these private attorneys, and the letter itself bears this out. According to Tatar, buyers were given the names of a number of private attorneys and the State Bar referral service only when they made inquiries about assistance and guidance with time-share laws. In Tatar's opinion, since DATCP needed to both serve the consumer and maintain a neutral position, it would have been inappropriate not to refer persons making these inquiries to attorneys who could answer these questions.

¶ 24.   David Ghilardi, assistant legal counsel for DATCP, testified that Foemmel was given the discretion to give a buyer the names of a number of private attorneys and the State Bar referral service when a

buyer asked for an attorney. Ghilardi also stated that the standard practice of the legal section when a consumer asked for an attorney was to provide the names of at least three attorneys that practice in the area of law in question and to add a reference to the State Bar attorney referral service. According to Ghilardi, even if given the names of lawyers in private practice, the time-share buyers were not encouraged to pursue private remedies, and he was not aware of anyone within DATCP who discouraged buyers from participating in the program or stated the program was poor because of the amount of recovery.

¶ 25. The circuit court chose to credit this testimony. Based upon it, the court could reasonably find that DATCP did not recommend or encourage persons who appeared eligible for restitution to forego the program and pursue private legal action against Peppertree. Therefore, there was sufficient evidence to support a finding that DATCP did not breach its duty of good faith and fair dealing implied in the consent order.

*Modification of the Consent Order*

■■■

¶ 26. Peppertree argues that equity requires that the consent order be modified so that portions of the restitution fund be made available to resolve private litigation claims of those who did not sign releases. Peppertree relies on *Lueck's Home Improvement, Inc. v. Seal Tite National, Inc.*, 142 Wis. 2d 843, 419 N.W.2d 340 (Ct. App. 1987), for the proposition that the circuit court may modify or clarify the terms of a restitution order when equity requires, regardless of whether the

conditions of WIS. STAT. § 806.07(1)[10] are met. Therefore, according to Peppertree, the court erred in analyzing its request for modification under § 806.07.

¶ 27. In *Lueck's*, a franchisor agreed with the Office of the Commissioner of Securities (OCS) to a consent order under which it would make restitution to its franchisees for alleged violations of the fraudulent advertising law. One franchisee accepted restitution and submitted an affidavit stating its claim; however, the affidavit did not include a schedule itemizing the return of supplies, inventory, and equipment as required under the consent order. OCS nevertheless included that franchisee's claim in its report to the court after the deadline for filing claims had expired. The franchisor objected to the claim because it did not

---

[10] WISCONSIN STAT. § 806.07(1) provides:

**Relief from judgment or order. (1)** On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

timely comply with the itemization requirement in the order. This court determined that the circuit court had the authority to exercise its discretion to allow the claim in spite of the franchisee's failure to comply with the filing requirements of the restitution order. *Lueck's Home Improvement, Inc.*, 142 Wis. 2d at 849–50. We also stated:

> [T]he . . . authority to adopt a consent decree comes only from the statute which the decree is intended to enforce . . . . But just as the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives, so must it be free to modify the terms of a consent decree when a change . . . brings those terms in conflict with statutory objectives.

*Id.* at 849 (quoting *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 651 (1961)). We recognized that the concept of restitution is grounded on the traditional equitable principle that once equity jurisdiction attaches, the court may grant full and complete relief. *Id.* at 849–50.

¶ 28. Peppertree did not bring *Lueck's* to the circuit court's attention, but instead couched its argument for modification in terms of a breach of the duty of good faith and fair dealing implied in the consent order. However, that duty, as we have already discussed, is relevant to a claim for breach of contract, *Foseid*, 197 Wis. 2d at 795–97, not to a request to modify a contract. Nonetheless, the circuit court correctly understood that it had the authority to modify the consent order on equitable grounds. It was not error for the court to frame its analysis in terms of Wis. Stat. § 806.07(1) because that provides for modification "upon such terms as are just"; and paragraphs (1)(a)—mistake, (1)(c)—misconduct of an adverse party, and (h)—"any other reasons justifying relief from the operation of the

judgment," together encompass all the arguments Peppertree was asserting for modification.

¶ 29. Whether Peppertree's request for modification is treated as a motion based on the court's equity jurisdiction under *Lueck's*, or as a motion under WIS. STAT. § 806.07(1), it is committed to the circuit court's discretion. *Lueck's Home Improvement, Inc.*, 142 Wis. 2d at 850; *Milwaukee Women's Med. Serv., Inc. v. Scheidler*, 228 Wis. 2d 514, 524, 598 N.W.2d 588 (Ct. App. 1999). We conclude the circuit court's decision not to modify the consent order was a proper exercise of the court's discretion because it is based on the facts of record, on the correct law, and it is a reasonable determination. *Milwaukee Women's Med. Serv., Inc.*, 228 Wis. 2d at 524.

¶ 30. The circuit court reasonably decided that Peppertree's proposed changes were not fair to the buyers because they reduced the restitution available to the eligible buyers. *Lueck's* does not suggest otherwise, because there the change in the consent order would have made more restitution available, not less. As for Peppertree's contention that DATCP's misconduct is a ground for modification, we have already concluded that there is sufficient evidence to support the court's finding that DATCP representatives did not improperly discourage persons from participating in the restitution program or recommended a person retain a particular attorney and file a private lawsuit. Finally, the circuit court could reasonably decide that Peppertree's "mistake"—its failure to anticipate the number of persons who would choose private litigation over participation in the program—was not a reason to modify the plain terms of the consent order.

*By the Court.*—Order affirmed.