COURT OF APPEALS
DECISION
DATED AND FILED

March 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP2092**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2017CV430**

**IN COURT OF APPEALS
DISTRICT IV**

WOLF APPLIANCE, INC.,

   PLAINTIFF-RESPONDENT,

V.

AMERICAN RANGE CORPORATION,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: RICHARD G. NIESS, Judge.  *Reversed and cause remanded for further proceedings*.

Before Fitzpatrick, P.J., Kloppenburg and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  The circuit court granted Wolf Appliance, Inc.'s motion for summary judgment on its breach of contract claim against American Range Corporation and denied American Range's summary judgment motion seeking dismissal of that claim.  Specifically, the court ruled that the undisputed material facts could only support the conclusion that an American Range brochure violated a 2013 settlement agreement between the parties.  On appeal, American Range argues that the undisputed material facts direct the contrary conclusion, or, alternatively, that issues of material fact preclude summary judgment.  As we explain, we conclude that issues of material fact, specifically competing reasonable inferences as to certain images in the brochure, preclude summary judgment.  Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶2    The parties in their summary judgment submissions to the circuit court do not dispute the following material facts.

¶3    The parties each manufacture high-end cooking equipment.  In 2008, Wolf obtained a federal trademark registration for the use of red knobs on "domestic" cooking equipment.  In 2012, Wolf sued American Range in federal court for trademark infringement and unfair competition by allegedly offering and selling cooking equipment with red knobs.  In 2013, Wolf and American Range executed a Settlement Agreement resolving the 2012 action.  Briefly stated, the Settlement Agreement prohibits American Range's use of red knobs on residential "cooking appliances."[1]

---

[1] In this opinion we use the term "cooking appliances" when the reference is to the terminology used in the Settlement Agreement; otherwise we use the term "cooking equipment."

¶4 In 2017, Wolf commenced this action alleging that American Range breached the Settlement Agreement because its "Residential Brochure" contains images of residential cooking appliances with red knobs.

¶5 The parties filed cross motions for summary judgment. After briefing and oral argument, the circuit court denied American Range's motion, granted Wolf's motion, ordered American Range to remove the brochure from its website, and enjoined American Range "from displaying images of cooking appliances with red knobs in all marketing, advertising and promotional materials relating to cooking appliances intended to be sold primarily for residential use." American Range appeals.

## DISCUSSION

¶6 American Range challenges the circuit court's ruling that the undisputed material facts entitle Wolf to summary judgment on its claim that American Range's brochure violates the Settlement Agreement. We first summarize the applicable standard of review and legal principles, we next provide additional pertinent details as to the terms of the Settlement Agreement and the contents of the brochure, and we then explain why we conclude that issues of material fact preclude summary judgment.

### I. Applicable Standard of Review and Legal Principles.

¶7 This court reviews a grant of summary judgment de novo, using the same methodology employed by the circuit court. *Bank of New York Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper if there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2) (2017-18).[2] The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." § 802.08(2).

¶8 This court views the summary judgment materials "in the light most favorable to the party opposing summary judgment." *United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807. "[I]f more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294.

¶9 The construction of a settlement agreement is also a question of law that we review de novo. *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶13, 257 Wis. 2d 421, 651 N.W.2d 345 (citing case law concerning construction of a stipulation incorporated into a judgment). In construing a settlement agreement, we apply contract-construction principles. *Id.*, ¶13. When we interpret a contract, our goal is to give effect to the parties' intentions. *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. "[T]he best indication of the parties' intent is the language of the contract itself[.]" *Id.* "When the terms of a contract are plain and unambiguous, we will construe" the settlement agreement "as it stands." *Peppertree Resort Villas, Inc.*, 257 Wis. 2d 421, ¶14. "In the guise of construing a contract, courts cannot

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

insert what has been omitted or rewrite a contract made by the parties." *Levy v. Levy*, 130 Wis. 2d 523, 533, 388 N.W.2d 170 (1986).

*II. The Terms of the Settlement Agreement and the Contents of the Brochure.*

¶10 The Settlement Agreement contains the following pertinent provisions:

> **Prohibition on Red Knobs**. American Range shall not Use any Cooking Appliances that include Red Knobs and American Range shall not Use any Red Knob Kits.
>
> "Cooking appliances" means residential gas and electric ranges, rangetops, dual-fuel ranges, cooktops, ovens, and barbecue grills.
>
> "Red Knobs" means a knob or knobs, all or any portion of which is Red in color.
>
> "Use" means to make, offer, distribute, market, promote, advertise, display, or sell.

¶11 The American Range brochure at issue consists of twenty-seven pages. We describe the brochure in detail because this appeal turns on what inferences can reasonably be drawn from its contents.

¶12 At the top of the first, or cover, page of the brochure is the word "AMERICAN" in large type, directly above the words "RANGE PROFESSIONAL" in smaller type. A few spaces lower down, in still smaller type, are the words "RESIDENTIAL BROCHURE." There is then an image of a black-knobbed piece of cooking equipment. The same piece of cooking equipment is featured again later in the brochure in a photograph of a home kitchen, alongside a photograph of a man and a woman cutting vegetables on a counter.

¶13     The second page of the brochure is headed, "OUR PROFESSIONAL COOKING EQUIPMENT HERITAGE" above the following text:

> Inspired by our passion for perfection, renowned for our product innovation and quality, American Range[] is a recognized leader in the commercial food service industry. Our commercial workhorse pedigree has been proven in the world's most demanding kitchens for over 30 years. In that time, innovative technology and robust engineering have advanced every aspect of our cooking equipment. Today our commercial equipment is competitively priced and constructed to withstand the challenges of the most demanding chefs and kitchens, making American Range[] cooking equipment one of the best investments on the market.
>
> COMMERCIAL – Our heavy-duty series, MEDALLION[], is utilized by some of the world's most renowned restaurants…. The oven base and rangetop are modular and can be reconfigured to accommodate any kitchen or cooking style which offers limitless flexibility and value.
>
> RESTAURANT SERIES – Our professional restaurant series is comparable to our MEDALLION[] series, and is designed for high-volume professional cooks and cooking situations that demand rugged and durable cooking equipment.
>
> RESIDENTIAL PRODUCTS: We earnestly feel we have perfected the professional home range. Our residential professional line of gas ranges, French-door wall ovens, slide-in rangetops and cooktops are commercial grade. Our professional cooking products have the soul and capability of our commercial ranges, blended with luxurious style. To summarize, we have 'civilized' our commercial ranges.
>
> AT AMERICAN RANGE WE ARE PASSIONATE ABOUT COOKING AND WE BUILD THE TOOLS AND EQUIPMENT THAT HELP YOU CREATE THE PERFECT MEAL TIME AND TIME AGAIN.

¶14     This text on page 2 is accompanied by seven historical photographs along with, at the bottom of the page, an image of an array of over ten pieces of cooking equipment lined up one next to the other, including several pieces of cooking equipment with red knobs.

¶15 Pages 3 through 26 of the brochure contain a combination of images and specifications of pieces of cooking equipment; all of the pieces of cooking equipment on these pages have black knobs. The images in these pages include: a mother and daughter baking in front of a piece of black-knobbed cooking equipment; couples cooking together in home-kitchen-like settings; individual pieces of black-knobbed cooking equipment in home-kitchen-like settings; and individual pieces of black-knobbed cooking equipment with explanatory descriptions.

¶16 The last page, page 27, contains two images. The entire top three-quarters of the page is an image of an array of multiple pieces of cooking equipment arranged in a line and in use with various foods cooking or warming in pots, pans, and a deep fryer. Additionally, three whole fish and two large fish filets cook on a flat-top griddle, and eight pieces of toast rest on a tray within a piece of cooking equipment that hangs on the wall above the rest of the cooking equipment. Some of the cooking equipment pieces have red knobs. Along the bottom of page 27 is a smaller version of the same image as on the second page, described above. There are no black-knobbed pieces of equipment in the images on pages 2 and 27.

¶17 Over its twenty-seven pages, the brochure contains over 100 images of black-knobbed pieces of cooking equipment and two images (one of which is shown twice) of pieces of red-knobbed cooking equipment.

*III. Analysis.*

¶18 The parties dispute whether the brochure's inclusion of red-knobbed pieces of cooking equipment on pages 2 and 27 violates the Settlement Agreement. As we explain, we conclude that competing reasonable inferences require that the dispute be tried.

¶19    As stated, the Settlement Agreement prohibits American Range from the "use" of "cooking appliances" that include red knobs.   The Settlement Agreement defines "cooking appliances" as "residential cooking appliances" and defines "use" as "make, offer, distribute, market, promote, advertise, display, or sell."  Incorporating the definitions into the prohibition, the Settlement Agreement provides, as pertinent here, that American Range shall not offer, market, promote, advertise, or display residential cooking appliances that include red knobs.[3]

¶20    Wolf contends that American Range's inclusion of the images of cooking equipment with red knobs on pages 2 and 27 of the brochure violates the Settlement Agreement because those images *display* red-knobbed cooking appliances within the meaning of the Settlement Agreement.  Wolf argues that the red-knobbed cooking equipment in the brochure can only be viewed as residential by the general public based on the following undisputed facts:  (1) the images are in a brochure entitled "Residential Brochure;" (2) all of the words in the brochure tell the general public that the brochure is promoting residential appliances; (3) the image of red-knobbed cooking equipment on page 2 is preceded by text which states that American Range's residential appliances are "civilized" versions of its commercial appliances, of "commercial grade," and "have the soul and capability of our commercial ranges;" and (4) nothing in the brochure labels the red-knobbed cooking equipment as commercial.  In short, Wolf argues that "a product is 'residential' if a manufacturer tells consumers it is 'residential,'" and that American Range's brochure tells the consumer that the displayed red-knobbed cooking

---

[3] The parties also do not dispute that the terms "residential" and "commercial" are to be given their ordinary dictionary definitions, with "residential" meaning "of or related to houses where people live rather than to places where they work" and "commercial" meaning "relating to businesses and their activities." *Cambridge English Online Dictionary*, https://dictionary.cambridge.org/us/dictionary/english (last visited Feb. 27, 2020).

equipment is "residential." Thus, Wolf's argument goes, because American Range is displaying red-knobbed cooking appliances that its brochure indicates to the general public are residential, it is violating the Settlement Agreement's prohibition against displaying residential cooking appliances with red knobs.

¶21 We agree that one reasonable inference from the undisputed facts is that a consumer would understand from the brochure that American Range is offering, marketing, promoting, advertising, or displaying residential cooking appliances with red knobs. However, we conclude that is not the only reasonable inference. Rather, a consumer could also reasonably infer from the brochure as a whole that the red-knobbed cooking equipment shown is designed for commercial use, that the red-knobbed cooking equipment is included in the brochure so that American Range can trade off and benefit from the good reputation of its own red-knobbed *commercial* line, and that only the black-knobbed cooking equipment in the brochure is residential.

¶22 The undisputed facts that support this alternative, reasonable inference include the following: (1) all of the specifications and labeled images in what is titled a "Residential Brochure" reference black-knobbed cooking equipment; (2) the red-knobbed cooking equipment is not shown in the context of home-kitchen-like settings; (3) the images on pages 2 and 27 show an array of over ten pieces of equipment and that array would support a cooking capacity, and extends over a length, that exceeds the capacity and length of the home-kitchen-like settings shown with black-knobbed cooking equipment in the rest of the brochure; (4) the larger image on page 27 is of an array of multiple pieces of cooking equipment that are being used to prepare dishes and foods in quantity, variety, and

9

skill intensity[4] well beyond the uses displayed in the home-kitchen-like settings shown with black-knobbed cooking equipment elsewhere in the brochure. It would be reasonable for a member of the general public, or jury member, to infer from the brochure as a whole that, in the words of the text on page 2 of the brochure, the pieces of black-knobbed cooking equipment shown throughout the rest of the brochure are "civilized" residential versions of the red-knobbed commercial cooking equipment shown in the image on page 2 that accompanies the photographs of American Range's "heritage" as a manufacturer of commercial cooking equipment.

¶23    Wolf appears to argue that this alternative inference is not reasonable because nothing prevents a consumer from purchasing for residential use red-knobbed cooking equipment from one of the lines that American Range labels as commercial. However, such a scenario contemplates how the consumer would be using the appliance, not American Range's "use" as defined in the Settlement Agreement. Wolf's argument, taken to its logical end, would prohibit American Range from making and selling *any* cooking equipment with red knobs, so long as consumers could purchase the equipment for use in their own homes. However, that is not what the Settlement Agreement forbids.

¶24    In sum, we conclude that at least two competing inferences can be reasonably drawn from the brochure as to whether American Range's brochure offers, markets, promotes, advertises, or displays residential cooking appliances with red knobs. Accordingly, neither party is entitled to summary judgment and the dispute must be tried. Because we conclude that neither party is entitled to summary

---

[4] Notably, there is the stand-out existence of a built-in deep-fryer in the image, which is also not for sale in the "residential brochure."

judgment on the breach of contract issue, and because the circuit court did not make findings regarding good faith and fair dealing, we accordingly do not address the parties' good faith and fair dealing arguments, which may be addressed at trial.

## CONCLUSION

¶25 For the reasons stated, we conclude that disputes of material fact preclude summary judgment. Accordingly, we reverse and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11