COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2020AP1871**

STATE OF WISCONSIN

Cir. Ct. No. **2020SC364**

IN COURT OF APPEALS
DISTRICT IV

---

SHAWNA HATHAWAY,

PLAINTIFF-RESPONDENT,

V.

RONALD J. GREENWOOD,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for La Crosse County: TODD W. BJERKE, Judge. *Affirmed.*

¶1    GRAHAM, J.[1]  Ronald J. Greenwood appeals from a judgment of replevin requiring him to return a dog to Shawna Hathaway.  I conclude that the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

evidence is sufficient to support the circuit court's determination that Hathaway is the dog's legal owner. Accordingly, I affirm.

## BACKGROUND

¶2 Hathaway and Greenwood started dating in or around 2017. It is undisputed that, at that time, Greenwood owned the dog in question, named "Todd."[2] Hathaway took Todd with her when her relationship with Greenwood ended in January 2020. Approximately three weeks later, Greenwood reported Todd stolen to the police. A police officer told Hathaway that she would be arrested unless she returned Todd to Greenwood, and Hathaway eventually complied. She then filed this replevin action in small claims court seeking Todd's return.

¶3 The matter proceeded to a bench trial. Hathaway testified that Greenwood told her that Todd was "her dog" as far back as September 2019, and that she "believed him." After that, Hathaway licensed Todd in her name. *See* WIS. STAT. § 174.05 (providing that "the owner of a dog more than 5 months of age … shall annually … pay the dog license tax and obtain a license"). She also began taking Todd to the vet. At trial, Hathaway introduced a receipt dated October 1, 2019, for an animal license for Todd, and she introduced Todd's rabies certificate, also from October 1, 2019.

---

[2] The parties dispute the manner in which Greenwood originally acquired the dog. At trial, Greenwood testified that he bought Todd in 2013, and he introduced a document purporting to be a bill of sale. Hathaway testified that Greenwood told her "that someone left [Todd] at his house and never came back."

¶4     Hathaway testified that she had her own apartment when she was dating Greenwood, but the apartment would not allow dogs. She and Todd stayed mostly at Greenwood's house, and she took Todd to stay with her when she was able to do so. Hathaway was at Greenwood's house "every day" to look after Todd. Greenwood explicitly referred to Todd on social media as "her [Hathaway's] dog" and as Hathaway's "comfort animal." Hathaway introduced screenshots of Greenwood's social media posts as evidence. One such post is a close-up of Hathaway and Todd embracing each other, and the caption, written by Greenwood, reads: "Is it a comfort animal with his human or an animal with his comfort human???"

¶5     Greenwood testified that he acquired Todd as a puppy, that Todd never lived with Hathaway, and that he never gave Todd to Hathaway. According to Greenwood, he allowed Hathaway to license Todd and take him to the vet, but he offered to pay for those expenses. And the reason Greenwood waited three weeks to call the police was because he had asked Hathaway to bring him back, and she promised that she would do so.

¶6     The following exchange occurred when Hathaway cross-examined Greenwood:

> Q. … [D]id you want me to believe that that was my dog because you thought that it would help me?
>
> A. I would – I'd say that I really played up the attachment of you guys because of your emotional state. I was trying to make you feel better about your life. Yeah, I was definitely trying to make you feel like you were welcome and a part of things here….
>
> Q. Did you tell me he was my dog?
>
> A. I don't think I – I didn't tell you – I didn't ever want to express that he was legally your dog, but he

definitely liked hanging out with you. He liked being on your lap. He liked –

Q. That's not what I asked you.

A. I – no, I never had intent to let you think for one second that you owned that dog and he was yours.

Q. You just wanted me to believe that so I would feel better?

A. I wanted you to get better, yes.

¶7 Although Greenwood represented that he licensed Todd with the state "every April 1st like you're supposed to," he did not produce any records or receipts. The record reflects that the circuit court at least implicitly found Hathaway's testimony to be more credible than the testimony offered by Greenwood. This credibility determination appears to have been based on the fact that, contrary to Greenwood's representation, there was no evidence that he licensed the dog until after Hathaway filed this replevin action. The court described this conduct as self-serving and could "only [be] see[n] … as an act to try to support [Greenwood's] case."

¶8 The circuit court determined that the dog belonged to Hathaway. Among other things, the court relied on Greenwood's references to Todd as Hathaway's dog and her "comfort animal." The court also relied on the veterinary records and the license from October 1, 2019, which showed that Todd was licensed in Hathaway's name.

¶9 While the circuit court was issuing its ruling, Greenwood questioned, "I don't know how you could just take someone's property and license it." The court responded, "Because there's probably an agreement that [the dog] was [Hathaway's] property." Greenwood questioned, "I don't see that agreement anywhere," and the court responded, "[T]hat's what I'm finding here today."

Greenwood pointed to the bill of sale from 2013, but the court told Greenwood that it "doesn't matter." Although the court did not spell out its reasoning, I interpret this statement to mean that Greenwood's original ownership was not relevant because the court found that Greenwood later agreed to give the dog to Hathaway.

¶10     The circuit court entered a judgment of replevin requiring Greenwood to return the dog to Hathaway. Greenwood now appeals.

## DISCUSSION

¶11     In a replevin action, "the ultimate fact question" is "which party is entitled to possession of the disputed property." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 468, 405 N.W.2d 354 (Ct. App. 1987). As stated above, the circuit court found that, although Greenwood was Todd's original owner, the parties reached an agreement during their relationship that he belonged to Hathaway.[3] Greenwood challenges the sufficiency of the evidence to support that finding.

¶12     An appellate court will review challenges to the sufficiency of the evidence in the light most favorable to sustaining the verdict and will search the record for evidence to support the court's factual findings. *See Outagamie Cnty. v. Michael H.*, 2014 WI 127, ¶¶7, 21, 359 Wis. 2d 272, 856 N.W.2d 603. During a bench trial, the circuit court is the "ultimate arbiter of the credibility of the

---

[3] Throughout his appellate brief, Greenwood references the circuit court's statement that "there's *probably* an agreement" that the dog was Hathaway's property. (Emphasis added) Reading this statement in isolation, Greenwood suggests that the circuit court was unable to definitely find the existence of an agreement. I disagree. As shown above, when the transcript is read in context, it becomes apparent that the court made a finding that there was an agreement between the parties about the dog's ownership.

witnesses." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. If the evidence could support multiple inferences, I will accept the one drawn by the court. *Id.* On appeal, I will uphold the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2); *Phelps v. Physicians Ins. Co.*, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615.

¶13 Here, I conclude that the evidence is sufficient to support the circuit court's finding that the parties reached an agreement during their relationship that Todd belonged to Hathaway. First, the court credited Hathaway's testimony that Greenwood told her that Todd was hers in September 2019. Second, the court relied on documentary evidence demonstrating that, after that point, Hathaway treated Todd as her own. This evidence included records that, beginning in October 2019, Hathaway took Todd to the vet and licensed Todd in her name. Third, the court relied on evidence that Greenwood also treated the dog as if it belonged to Hathaway by allowing Hathaway to take the dog to the vet and to license him, and by describing Todd on social media as "her dog" and her "comfort animal."

¶14 Greenwood argues that the court placed undue emphasis on Hathaway's pet license receipt and the veterinary records. He contends that reliance on Hathaway's act of licensing Todd was improper because, under WIS. STAT. § 174.001(5), "owner" is defined as one who "owns, harbors or keeps" the dog. Greenwood argues that Hathaway could have registered Todd "not as [the] owner, but as someone who 'harbors or keeps' the dog."

¶15 This argument is unpersuasive. To the extent that Greenwood means to argue that a pet license may not conclusively prove ownership, I agree. However, the statutory language in no way precludes courts from considering

6

licensing records and weighing their probative value when determining ownership. In this case, the court did exactly that: both parties pointed to pet licensing records to support their claims of ownership, but the court ultimately found Hathaway's license—dating back to October of 2019—more probative than the license Greenwood obtained after this case was filed, which the court viewed as "an act to try to support [his] case." This was a proper exercise of the court's role of weighing the evidence when acting as factfinder.

¶16     Greenwood also argues that the circuit court placed undue emphasis on the veterinary records submitted by Hathaway. As with his argument about pet licensing documents, this argument challenges the weight that the court gave to these documents. Greenwood argues that the veterinary records "fail to support the court's conclusion that they prove ownership" because they identify Hathaway as "client" rather than "owner." But the fact that the documents do not identify Hathaway as an "owner" does not undermine their relevance. Based on the fact that Hathaway handled Todd's veterinary appointments, the court could and did infer that the parties agreed that Hathaway would exercise control over Todd and treat him as her own. The record does not support Greenwood's assertion that the court placed undue emphasis on these records.

¶17     Finally, Greenwood faults the court for "failing to adequately analyze the legal elements of what constitutes a gift." Those elements are: (1) intent to give, (2) actual or constructive delivery, (3) termination of giver's dominion, and (4) the recipient's control over the gift. *Peters v. Peters Auto Sales, Inc.*, 37 Wis. 2d 346, 350, 155 N.W.2d 85 (1967).

¶18     During the circuit court proceedings, neither party suggested that the court was required to use the legal framework for a gift to determine the legal

ownership of the dog. Greenwood argues for the first time on appeal that the court should have made determinations about each of these elements and that the evidence was insufficient to satisfy them. In response to Greenwood's new argument on appeal, Hathaway argues that the delivery and dominion elements are relaxed when a court determines whether persons living in the same household have made and received a gift. *See Potts v. Garionis*, 127 Wis. 2d 47, 52-54, 377 N.W.2d 204 (Ct. App. 1985).

¶19 When, as here, a party fails to specifically raise an issue before the circuit court in a manner that allows the court to address the issue and correct any potential error, the party forfeits that issue on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45, n.21, 327 Wis. 2d 572, 786 N.W.2d 177. Although forfeiture "is a rule of judicial administration" and I have discretion to overlook it, *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702, there are good reasons to apply the rule in many cases. Among other things, the rule requiring litigants to raise issues in the circuit court "gives both parties and the circuit court notice of the issue[s] and a fair opportunity" to address them, and it "enable[s] the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnote omitted).

¶20 As such, if Greenwood believed that the circuit court was required to make specific findings with regard to the legal elements of a gift, Greenwood should have brought that legal framework to the attention of the circuit court— either during the trial or through a motion for reconsideration. Greenwood's failure to articulate what he believes to be the applicable legal standard until appeal deprived Hathaway of an opportunity to develop the record with evidence

relevant to that standard. It also deprived the circuit court of an opportunity to correct any error.

¶21 Although I have concluded that Greenwood forfeited the argument about the elements of a gift, I pause to note that, had Greenwood brought this legal framework to the circuit court's attention, the court could easily have found the elements satisfied based on the same evidence and inferences discussed above. The testimony that Greenwood told Hathaway that Todd was her dog and that Hathaway believed this statement supports an inference that Greenwood intended to give the dog to Hathaway. The evidence that Hathaway subsequently registered Todd in her name and took him to the vet, and that Greenwood's social media post referencing the dog as "her dog" and her "comfort animal," could support findings of constructive delivery, termination of Greenwood's dominion over the dog, and Hathaway's exercise of control over the gift.

¶22 In sum, I conclude that the evidence presented to the circuit court, evaluated against the backdrop of the court's assessment of the witnesses' credibility, supports the court's determination that the dog belonged to Hathaway. While the evidence may also support other inferences, I will accept the reasonable inferences drawn by the circuit court. *Peppertree Resort Villas*, 257 Wis. 2d 421, ¶19.

## CONCLUSION

¶23 For the reasons stated above, I conclude that the circuit court did not err when it found that the dog belonged to Hathaway and entered a judgment of replevin.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.